W. B. KILER V. FRANK WOHLETZ.

No. 15,558.    (101 Pac. 474.)

SYLLABUS BY THE COURT.

1. CONTRACTS—*Compromise and Settlement.* Where two parties in settlement of a controversy, wherein one contends that he owes the other a small sum while the other contends that there is due to him a much larger amount, compromise and fairly agree upon the amount due, and the debtor then executes a promissory note therefor, the promise will be binding upon the parties and the note valid.

2. ——— *Same.* Where there has been a valid agreement to compromise it is not admissible to go bàck of the settlement to determine who was in the right in the original contention.

3. ——— *Fraud—Duress.* The fact that the creditor insisted that the larger amount was due and that he threatened to enforce his claim by a civil action constitutes neither fraud nor legal duress.

Error from Atchison district court; BENJAMIN F. HUDSON, judge.    Opinion filed April 10, 1909.    Reversed.

*Jackson & Jackson,* for plaintiff in error.

*George G. Orr,* and *James W. Orr,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is an action of replevin, brought by the maker of a promissory note to recover possession of the same from one claiming to hold it as a *bona fide* purchaser.    The note was given by Frank Wohletz to J. H. McCann as a result of a lightning-rod transaction, in which it is alleged that McCann agreed to equip plaintiff's house and barn with lightning-rods if plaintiff would pay for the joint and brace and seventy-five cents per foot for two feet of the rod and thereafter represent to other farmers that the rods cost him seventy-five cents per foot.    After placing the

rods a dispute arose as to the price to be paid, McCann claiming that it was $240 and Wohletz offering to pay $1.50. The result of the dispute was that McCann drew up a promissory note for $150, which Wohletz finally signed, claiming that he thought he had to sign it or be sued. The note was subsequently indorsed by McCann and given to F. E. Crane, who transferred it without his indorsement to the defendant, Kiler, as security for an alleged indebtedness already existing. The jury returned a verdict in favor of the plaintiff, finding that Crane had full knowledge of the circumstances attending the giving of the note and did not in fact purchase it, and that, at the time the note was deposited as collateral security by Crane, Kiler knew or had reason to believe that the note was fraudulent; also, that there was no valid indebtedness existing between Crane and Kiler prior to the date of the note in question, and that the defendant when he took the note knew or had reason to believe that there would be opposition to its payment. Upon these findings the trial court gave judgment for the plaintiff, awarding him possession of the note, of which judgment Kiler complains, alleging as error the giving of certain instructions and the refusal to give others.

Whether there was fraud in the inception or giving of the note was an important question in the case. Wohletz contended that under the contract with McCann he was to pay only $1.50, while McCann claimed that he was to pay $240. Wohletz insisted that he was to pay for only two feet of the rod at a certain rate per foot, while McCann insisted that he was to pay that rate for the entire length of the rods. Finally a compromise was effected by which it was agreed that the price of the rods should be $150, and Wohletz gave his note for that amount. At the close of the testimony Kiler asked the court to give the following instruction:

"Even though the jury may believe from the evidence that in the making of such settlement said Mc-

Cann stated and represented that he had attorneys employed by the year, or made other representations as to his right to recover the amount claimed by him for the material furnished and work and labor of putting such rods upon said house or barn, or made other representations as to his right to recover the amount he claimed, and that with full knowledge of the claims relied upon by said Wohletz, he, Wohletz, nevertheless made such settlement and agreement, he would be bound thereby and can not recover in this action. The representations so claimed to have been made would not make void the said settlement or the note given in pursuance thereof."

This was refused, but the court did instruct the jury that if there was a real dispute between the parties as to the terms of the contract and as to the amount to be paid for the rods, each understanding the claims of the other, and if a settlement was made by which the note in question was given, Wohletz was bound by the settlement; but the court added, "provided you find that said Wohletz was not induced to make such settlement and to sign the said note by fraud or deception on the part of McCann." The rule given as to the effect of a compromise was unexceptionable, but there was no basis in the testimony for the statement in the proviso. Of course, if there was fraud or deception practiced upon Wohletz in the settlement itself it would not bind Wohletz, but we discover nothing in the testimony printed in the abstract which amounts to fraud in the settlement or which afforded any reason for qualifying the effect of the settlement. In the making of the settlement there was no concealment of facts, no misunderstanding of the claims of McCann, nor is it contended that Wohletz did not know of the contents of the note which he signed. In describing the circumstances attending the making of the settlement he said that after the rods were put up a dispute arose whether he should pay for two feet of the rods or the whole of them, when he told McCann: "I am not going to pay for them rods; I did n't want them in the first place

Kiler v. Wohletz.

and I am not going to pay for them." When McCann told him that he must give his note for $240 Wohletz replied that "he did n't believe that he was compelled to pay him $240; that finally McCann came down to $150 and said he had to have $150 or they would sue me, and then McCann fixed up the note and said that I had to sign it." He stated that the reason that McCann cut it down from $240 to $150 was "because I would n't give him any more; I would n't settle it for $240." After stating that he told McCann that he would n't pay the amount claimed he stated that McCann "offered to take $150 and I supposed that I would have to pay that or be sued."

It will be observed that Wohletz conceded that he purchased the rods and that he was owing something for them. There was a substantial controversy between the parties and a compromise and settlement of that controversy. That being true, the court can not go behind the settlement to determine whether the original claim of McCann was just or whether Wohletz's version of the negotiations was right. If the parties met on equal terms and the dispute was settled without fraud the settlement concludes both of the parties. (*Minor v. Fike*, 77 Kan. 806, 93 Pac. 264.) Now, the fact that McCann insisted that the larger amount was due, and threatened that the claim would be enforced by civil action if the note were not given, does not of itself constitute fraud in the settlement. The facts involved in the controversy between the parties appear to have been as available to one as to the other. It is not claimed that there was weakness of mind on the part of Wohletz, nor that any confidential relations existed between them. McCann, it is true, urgently insisted on a settlement, but his importunity or persistent pressure can not under the circumstances amount to fraud. Duress is a species of fraud, but the mere fact that McCann threatened to enforce his claim by a civil action is not duress and will not avoid liability on the

Kiler v. Wohletz.

compromise agreement. It is never duress to threaten to do that which a party has a legal right to do, and the fact that a threat was made of a resort to legal proceedings to collect a claim which was at least valid in part constitutes neither duress nor fraud. (*Shelby v. Bowman,* 64 Kan. 879, 68 Pac. 1131; *Plaster Co. v. Blue Rapids Township,* 77 Kan. 580, 96 Pac. 68; *King v. Williams,* 65 Iowa, 167, 21 N. W. 502; *James & Haverstock v. Dalbey,* 107 Iowa, 463, 78 N. W. 51; *Whittaker v. S. W. Va. Improvem't Co.,* 34 W. Va. 217, 12 S. E. 507; *Dunham v. Griswold,* 100 N. Y. 224, 3 N. E. 76; *Pryor v. Hunter,* 31 Neb. 678, 48 N. W. 736; *Buck et al. v. Axt,* 85 Ind. 512; *McClair v. Wilson,* 18 Colo. 82, 31 Pac. 502; *Holt v. Thomas,* 105 Cal. 273, 38 Pac. 891; *Atkinson v. Allen,* 36 U. S. App. 255, 71 Fed. 58, 17 C. C. A. 570; 1 Page, Cont. § 253.)

Since none of the things said or done, as set forth in the testimony, constituted fraud or duress, it became the duty of the court so to advise the jury upon the request of the defendant, and the instruction given by the court upon the theory that there was testimony tending to show fraud in the settlement was prejudicially erroneous. If there had been fraud in the giving of the note the burden would have been upon Kiler to show that he was a *bona fide* holder for value, but in the absence of proof of such fraud the burden remained on the plaintiff. The finding, therefore, that the note was obtained by fraud and that the subsequent holders knew that it was so obtained was not sustained by the testimony. The evidence introduced for the purpose of impeaching the validity of the note in the hands of Crane and Kiler is not satisfactory, and in view of the erroneous instructions and the unsustained findings the verdict can not be upheld.

The judgment is therefore reversed and the cause remanded for a new trial.