MARY L. LOGSDON *et al., Appellees,* v. O. B. HUDSON *et ux., Appellants.*

No. 16,707.

### SYLLABUS BY THE COURT.

ESTOPPEL—*Compromise and Settlement.* A compromise of a disputed claim, made upon sufficient consideration, with knowledge of facts upon which an alleged defense thereto is based, will operate as a surrender of such defense, when the adverse party has executed the terms of the settlement on his part.

Appeal from Haskell district court. Opinion filed December 10, 1910. Affirmed.

*B. F. Milton,* for the appellants.

*T. W. Marshall,* and *Herbert Rhoades,* for the appellees.

The opinion of the court was delivered by

BENSON, J.: This is an appeal by Hudson and wife from a judgment for the specific performance of an agreement to convey land. In the year 1902 Patrick, a real-estate and collection agent at Santa Fe, in Haskell county, sold land to Hudson, a lawyer, living in Missouri, and afterward sold one of the tracts to another party for Hudson, as his agent. In the same year Hudson bought lands in Haskell county at tax sales, and, following this, Patrick made collections from time to time of redemption money and purchased other tax-sale certificates for him, and sold county warrants to him. Considerable correspondence followed between them relating to these matters, and relating to a proposed purchase by them jointly of forty quarter sections of land, which, however, was not made. In the year 1905, while this business and correspondence was still in progress, P. A. Logsdon entered into partner-

ship with Patrick and the firm continued the business. Logsdon was the owner of a pasture which included a large number of tracts held by Patrick & Logsdon under tax titles and otherwise, taken and held in the name of James A. Hill, for their use. In the year 1906 Patrick & Logsdon purchased a quarter section—the subject of this action—which was included in this pasture, and upon which Hudson held a tax deed, taking a conveyance to Hill. Mr. Logsdon then wrote to Hudson, informing him that he (Logsdon) owned the land, that it was in his pasture, offering to redeem from the tax deed, and asking for a quitclaim deed. Several letters were written by them on this subject, and a suit was commenced by Logsdon to redeem from the tax deed. Hudson then took counsel to determine whether he should make the deed. Following the advice thus obtained he wrote to Logsdon, on September 15, 1906, a letter, too long to be inserted here, saying in substance that it was the duty of Patrick, as his agent, to buy in the outstanding title for him; that Logsdon, as a partner of Patrick, had no better right to hold the land against him than Patrick had; complaining that the circumstances of the purchase had been concealed from him, and adding:

"And I am further convinced that if all the facts were laid bare you would be defeated in a suit contesting the title to this land. I have decided, however, acting on the advice above referred to, to accept my money and a bonus of $5 offered by you. I have footed up the interest and expenses and it amounts to $66.76, a statement of which I enclose you. As I understand your law, my investment bears 12 per cent interest from the date of my deed; $33.65 of this amount was paid for your tax certificates. The following statement

shows the items composing my expenses in this matter, to wit:

"Paid for tax deed........................ $10 21
  "     county clerk fees.................  1 10
  "     recording deed ....................  1 25
  "     to redeem Logsdon tax certificate..... 33 65
  "     taxes for year 1905................  8 65
Interest since deed was issued, at 12 % on
  $56.84 ...............................  6 90
Bonus offered .........................  5 00
                                         _____
                                         $66 76

"If you are satisfied, send draft for $66.76 and I will deliver you quitclaim deed to this land."

Logsdon answered this letter at once, sending the amount, $66.76, which was duly received by Hudson, and by further letters it was agreed that he should execute the deed in a short time, on the return of his wife, then absent from home. The deed was made accordingly and taken by Hudson to Kansas, but on his arrival he found that Logsdon was dead, and it was not delivered. Afterward, in a division of the real estate of the firm between Mrs. Logsdon, sole heir of her deceased husband, and Patrick, this tract became the property of Patrick, although the legal title was still in Hill. Hudson finally refused to convey, and this suit was brought in the name of Mrs. Logsdon as plaintiff. After a partial trial Patrick was admitted as a party plaintiff, and the cause was continued; issues were then made up, and the cause was tried at the next term. In his answer Hudson pleaded the agency of Patrick, and his duty and the duty of the firm to act for him. He also pleaded fraud on the part of Logsdon in falsely representing that he was the owner of the land, and in concealing the real facts, and offered to return or to pay into court the consideration received.

There was a conflict in the evidence concerning the nature and extent of Patrick's agency, but the evidence showed that the correspondence relating to the purchase of the tax title was carried on in Logsdon's

name, on the belief that Hudson would be more likely to make the conveyance if it appeared that Logsdon owned the land than he would if the true situation were stated. But after his suspicions were thoroughly aroused, with full knowledge that Logsdon was a partner with his own agent, with a suit to redeem from his title pending against him, acting upon advice of counsel, and with due deliberation, he proposed a settlement, and named the sum he would accept for a conveyance, which was promptly paid, and the time was fixed for making the deed. It is said, however, that he still did not know that Patrick was interested in the land. Even if this be true, the fact of the partnership, the nature of the business of the firm, and all the circumstances, as shown by the correspondence and his conduct, were sufficient to put him upon inquiry, which he ought to have made, if he did not in fact do so. The letter of September 15, 1906, plainly stated that he believed that upon all the facts he could defeat the pending suit, and yet with this knowledge he made the compromise. Having done so, the action having been dismissed, and Mr. Logsdon having died, it would be inequitable now to set aside the settlement thus made. The law favors settlements, and they will not be disturbed except for cogent reasons.

Findings of fact were not requested or made, but the decision can, and we believe should, be sustained on the ground that whatever defenses existed were surrendered by the compromise. (*Minor v. Fike,* 77 Kan. 806.)

Complaint is made of the action of the court admitting Patrick as a plaintiff with Mrs. Logsdon, but full opportunity was given to meet the claim made by the new plaintiff, and whether Mrs. Logsdon had any interest in the controversy is immaterial to the defendants. All parties in interest were before the court, and their respective rights were fully investigated and determined:

The alleged error in the admission in evidence of an answer filed in another action is regarded as immaterial.

The judgment is affirmed.