No. 22,555.

FRED SHRADER, *Appellee*, v. B. J. McDANIEL, *Appellant*.

SYLLABUS BY THE COURT.

1. PROMISSORY NOTE—*Note Not Executed Under Duress.* In an action on a promissory note, the evidence is held sufficient to sustain a finding against the defense that the note was executed under duress.

2. SAME—*Note Given in Compromise and Settlement of Indebtedness— Valid Consideration.* In order to increase the surplus of a state bank so that it might come within the provisions of the state guaranty law, the president and another stockholder, for no other consideration, gave their promissory note to the bank for $1,000, and with their consent the bank sold it to another bank, taking credit in that bank for the amount of the note, and reported the deposit as a surplus and was admitted to the benefits of the guaranty law. Eighteen months later the president sold his stock, and at his request the cashier directed the bank holding the note to apply the deposit on the note, mark it paid, and return it to the makers. Afterwards, the cashier sold his stock and the bank was taken over by other parties and the facts with reference to the bank's surplus were disclosed. *Held*, that the cashier acted without authority in having the deposit in the other bank applied upon the note and the note surrendered, and that there was a valid consideration for his subsequently giving a note in compromise and settlement of his liability to the bank by reason of the transaction.

3. SAME—*Improper Question Submitted to Jury—Question of Law Not of Fact.* In an action on a promissory note given by the cashier in settlement of his liability, under the facts stated in the above paragraph, the question whether the bank sustained a loss by the cancellation of the deposit was a question of law and not of fact, which should not have been submitted to the jury, and a finding by the jury that the bank sustained no loss by the transaction is contrary to the undisputed facts.

4. SAME — *Compromise and Settlement — Supported by Consideration.* While compromises and settlements, like other contracts, must be supported by a consideration, it is enough to support the agreement that there was a doubtful question, and where the parties to a compromise act in good faith and one agrees to pay, and the other to accept a certain sum in satisfaction·of his liability upon a claim, there is sufficient consideration for the compromise.

Appeal from Cowley district court; OLIVER P. FULLER, judge. Opinion filed May 8, 1920.  Affirmed.

*J. E. Torrance,* and *O. W. Torrance,* both of Winfield, for the appellant.

*S. C. Bloss,* of Winfield, for the appellee.

The opinion of the court was delivered by

PORTER, J.:  The action was upon a promissory note.  There was a verdict and judgment for the plaintiff, from which the defendant appeals.

On July 6, 1914, the plaintiff, Fred Shrader, was president, and the defendant, B. J. McDaniel, had been for a number of years cashier, of the Farmers and Merchants State Bank of Dexter.  McDaniel, who had sold his stock to Shrader and was retiring as cashier, borrowed $490 from the bank, giving his note therefor.  The bank gave him credit for the amount, and he gave a check to Shrader for the $490, which the bank paid. Subsequently, Shrader, who had guaranteed the bank's paper to the reorganized bank, purchased the note from the bank and brought this action on the note.  The answer set up two defenses; that there was no consideration for the note, and that it was procured by duress of the bank and of Shrader.

The bank was originally organized with a paid-up capital of $10,000.  It desired to come within the provisions of the bank guaranty law, and it was necessary to have a surplus of $1,000. Mr. Pollard, of Kansas City, Mo., owned a large portion of stock and was president of the bank.  The defendant, B. J. McDaniel, had been connected with the bank from its organization, was the cashier, and in the active management of the bank.  In order to show a surplus, Pollard and Mr. Esch, another stockholder, gave their note to the bank for $1,000 without any consideration.  The bank transferred this note to a bank at Caney and took credit on the books of that bank for $1,000.  This

Shrader v. McDaniel.

credit was reported as surplus, and in August, 1909, the bank was admitted to the benefits of the state guaranty fund. The books of the bank showed no liability to Pollard or Esch for the $1,000, which was carried as a balance in the Caney bank until March, 1911, when the Dexter bank purchased what is known as the Nicholson building for $2,500. The bank paid Nicholson $1,500 in cash and in the deed assumed and agreed to pay a mortgage of $1,000 on the building, held by Mr. Herpich. The mortgage was not due for five years, and the mortgagee did not care to accept payment. At Pollard's suggestion, Mc-Daniel, who wrote the deed, stated the consideration as $3,500. McDaniel represented the bank in the negotiations for the purchase of the building and secretly received a commission from Nicholson of $100 and a box of cigars. He testified that he did not believe that the president of the bank knew that he received the commission. After the deed had been recorded and returned to the bank, according to McDaniel's testimony, Pollard advised him that it would have been better if it had not shown the assumption of the mortgage, and that it should have been assumed verbally. McDaniel thereupon put the deed in a typewriter and crossed out the statement that the bank assumed the mortgage. The altered deed was carried in a drawer where bank papers were kept, until the latter part of June, 1914. Shrader had become connected with the bank and had bought some shares of stock in 1909. In 1911 he purchased half of the 52 shares owned by Mr. Pollard, and procured another stockholder to purchase the other half, and was made president. Sometime in June, 1914, there were negotiations for a consolidation of the bank with the First National Bank of Dexter. McDaniel sold his 14 shares of stock to Shrader and arranged to retire as cashier. The parties interested in the other bank learned of the $1,000 mortgage on the Nicholson building, and a bank examiner who was examining the bank and supervising the consolidation, learned of the false surplus and the alteration in the deed to the bank building. The negotiations between the two banks were held up until certain requirements of the bank commissioner were complied with. In order to carry out the consolidation, Shrader agreed with the bank commissioner to guarantee the owners of the bank that the surplus of $1,000 would be made good. McDaniel and

Shrader talked the matter over by themselves, and according to McDaniel's testimony, Shrader said, "We have got to straighten this up." I said, "I don't know how to do it." He says, "We will make an assessment on all stockholders of ten per cent." Shrader claimed that he had purchased McDaniel's stock and the other stock on the representations that its book value was $110 a share. Two of the stockholders refused to be assessed, and McDaniel's testimony is that he said:

"Rather than have trouble over it I will pay all of it. He (Shrader) said one time that he could cause the cashier trouble over this. I got afraid. I was afraid of a lawsuit. This is exactly what caused me to make the note."

It is very evident that he did not desire a lawsuit, in view of his admissions that while cashier he had secretly taken a commission for negotiating the purchase of the bank building, and had falsely altered the deed so as to conceal the fact that the bank had assumed the mortgage; and it is probable that he did not care to have made public the facts concerning the manner in which the surplus of the bank had been increased, and especially the fact that, without any authority, he had directed the deposit which the bank had in the Caney bank applied to the payment of the Pollard and Esch note. The jury heard his explanation and that given by Shrader as to what transpired in the conversation between them when the note was executed, and found that there was nothing substantial in the claim that the note was executed under duress. The findings are that the plaintiff did not demand or request defendant to sign the note; and that he did not impliedly hold out the hope that if defendant signed it he would not be troubled with criminal charges. This disposes of the defense of duress.

The jury made a finding that there was a valid consideration for the note, consisting of the credit of $490 which the bank gave the defendant and paid out on his check. They further found that at the time he executed the note he was indebted to the bank, but this, we assume, means that at the same time he gave the note he got the credit. There was, manifestly, a valid consideration as between McDaniel and the bank. In exchange for his note, the bank gave him credit for $490 and paid out that sum on his check. It is true, the

check was paid to Shrader, but the note was not satisfied; and afterwards the bank sold the note to Shrader, so that there was a consideration for the execution of the note in the first instance to the bank, and a consideration passing to the bank from Shrader for its purchase. It is argued, however, that there was no consideration for the note as between Shrader and McDaniel, because it is insisted the bank lost nothing by the transaction connected with the cancellation of the Pollard and Esch note, or the application of the credit in the Caney bank to the payment of those notes. And attention is called to a finding that the resources or liabilities of the bank were not changed by that transaction, and also to a finding that plaintiff knew and had been informed of the existence of the mortgage prior to the time the note sued upon was given. The plaintiff objected to the submission of the special questions to the jury. In our opinion, some of the questions should not have been submitted. The facts with respect to the execution of the Pollard and Esch note, and its sale to the bank at Caney by which $1,000 was placed to the credit of the Dexter bank, are not disputed. At Pollard's request, McDaniel directed the Caney bank to apply the bank's $1,000 deposit to the payment of the note, mark the note paid, and send it to Pollard. This is in substance what he admits. At that time Pollard had sold his stock and apparently had no further interest in the bank; but if he had been president of the bank, neither he nor McDaniel had any authority to decrease the surplus of the bank by directing the Caney bank to wipe out the deposit and apply it upon the note. When Pollard requested McDaniel to do this, the latter should have refused to do it, unless the bank commissioner authorized it to be done. He had no right to determine for the bank that Pollard and Esch were not liable on the note. They could not have resisted payment of the note in the hands of the Dexter bank; and the facts being undisputed, the question whether the bank sustained a loss of $1,000 by the cancellation of the deposit and the return of the note became and is a question of law and not of fact. It was, to say the least, a question of serious doubt whether Pollard and Esch could have recovered from the bank the voluntary payment they made for the purpose of increasing its surplus. By reason of his unauthorized act in applying $1,000 of the

bank's surplus to the payment of this note, McDaniel rendered himself liable to an action by the bank to compel him to restore the full amount. The subsequent muddying of the waters by the concealment of the true consideration for the purchase of the bank building (which the jury found occasioned no loss to the bank) could not relieve McDaniel from liability for his unauthorized disbursement of the bank's credit in the Caney bank. The finding of the jury that the bank lost nothing by this transaction was contrary to the undisputed facts, and the question should not have been submitted.

The court submitted to the jury the issue of whether the note sued upon was given in compromise of a disputed claim the bank held against McDaniel, and although there was no direct finding to this effect, the general verdict must be held to include such a finding. The numerous authorities cited by the defendant in support of the proposition that the existence of a dispute or controversy between parties is not a sufficient consideration to support a promise to pay money in settlement of it, where no valid demand for anything whatever exists in favor of the promisee (*Price v. Bank*, 62 Kan. 743, 754, 64 Pac. 639, and cases cited in the opinion) require little comment. Defendant's entire argument on this question is based upon the unwarranted assumption that the bank could not have maintained an action to recover anything from him by reason of the manner in which he managed and controlled its affairs. It cannot be said that there was no foundation in law or in fact to support a claim that he was liable to the bank for his action in disposing of its surplus, wholly aside from what transpired in connection with the concealment of the assumption by the bank of the mortgage on the building.

On the subject of considerations for a compromise and settlement, Ruling Case Law has this to say:

"Like all other contracts, a compromise must be supported by a consideration. . . . It is enough to support the agreement that there was a doubtful question, and a compromise fairly and deliberately made upon consideration, and the actual rights of the parties, whatever they may be, cannot affect the question. . . . In general a moral obligation will not be sufficient to support a promise made upon a compromise of a disputed but otherwise legally groundless claim; but where there is a clear moral obligation on the part of one of the parties to a compromise, equity will consider it in support of the agreement." (5 R. C. L., pp. 889, 890.)

In the same authority it is stated:

"If the element of good faith characterizes the controversy, and this, in the larger sense, is saying it is free from fraud, the best considered cases hold that the compromise should be supported without regard to the character of the claims; for if the merits of the claims are to be adjudicated in every instance the right of honest disputants decisively and finally to compromise and settle their controversy is denied, and this without assurance that the judgment imposed on them is less fallible than their own." (p. 882.)

"It has been held that the dispute itself is not required to have been about a claim or matter actually doubtful. If the parties *bona fide*, and on reasonable grounds, believed it to be doubtful, it is a sufficient consideration to support the compromise, even if there is a certain defense to it" [citing *Smith v. Farra*, 21 Ore. 395]. (p. 882.)

Applying these rules to the undisputed facts, it is clear that as between Shrader and the defendant there was a consideration for the compromise of his liability to the bank. The amount it was claimed the bank had lost was agreed to be $1,000. The defendant, who, as cashier, was responsible for the loss, in order to avoid a suit to compel him to pay it, agreed to pay the assessment on 49 shares, 14 of which he had just sold to Shrader, and 35 of which were owned by two other stockholders. The rest of the deficit was paid by Shrader. The fact that Shrader had already assured the bank commissioner that he would see that the surplus was paid, did not relieve the defendant of liability.

In one instruction the court charged that before defendant could avoid the payment of the note, he must prove by a preponderance of the evidence that the bank would lose nothing by reason of his failure to pay the note. The bank was not a party, and there was no claim that the bank could lose anything by reason of the failure of the defendant to pay the note. The instruction should not have been given, but we fail to see how it could prejudice the defendant. The court did instruct upon the controlling question, and the jury were told that there was some evidence that at the time of the giving of the note there was a compromise and settlement of the disputed liability on the part of the defendant to the bank. "And if you are satisfied from all the evidence that there was in fact a good faith dispute as to the liability of the defendant to the plaintiff or said bank, and if as a compromise and settlement

of such dispute the note in controversy was given, then such settlement would be sufficient consideration to uphold·said note." In view of this instruction and facts sufficient to sustain a general verdict upon that theory, most of the complaints with respect to the instructions need not be considered. The criticism of the instructions is largely based upon defendant's theory that the bank sustained no loss in any way by the conduct of the defendant.

It follows that the judgment is affirmed.