No. 29,680.

The Massey-Harris Company, *Appellant*, v. H. E. Horn et al., *Appellees*.

(294 Pac. 666.)

Opinion filed January 10, 1931.

*Clyde E. Souders* and *Otto R. Souders*, both of Wichita, for the appellant.

*William J. Wertz, Vincent F. Hiebsch* and *Forest C. McCalley*, all of Wichita, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought by the Massey-Harris Company against the Reeder-Horn Implement Company to recover the sum of $1,472.95, the amount alleged to be due to plaintiff from the defendants for machinery and repairs delivered to them. The jury found for defendants and judgment in their favor was entered. Plaintiff appeals.

Plaintiff alleged that because of goods delivered to defendants not paid or accounted for, the latter had become indebted to plaintiff in the sum of $1,472.95, for which judgment was asked. Among other things the defendants answered that a complete settlement had been made with plaintiff of all matters and dealings between them with respect to the goods sued for, and that under that settlement defendants had paid plaintiff $1,092.95, which had been accepted by plaintiff in full settlement of all controversies between them relating to the goods in suit. It appears that plaintiff is a manufacturer and jobber of farm machinery and disposes of its products through selected agencies. The defendants had been designated by plaintiff as its agents in Sedgwick county and later in Sumner county, under contracts for the sale of machines and also for the reshipment of machinery to other places upon the direction of plaintiff, all to be done on the basis of stipulated charges and credits. The claim of defendants was that under an oral agreement defendants should act as agent in Sumner county, machinery was shipped to them at Wellington, and some goods were sent to Belle Plaine and placed in charge of Harold Koger, who defendants claim was named as a subagent at that place under the approval and instruction of a representative of plaintiff, who had lined up subagents in Sedgwick and Sumner counties. This action involves only the transactions at Belle Plaine and the goods delivered there. Disputes arose between plaintiff and defendants in regard to the agency in Sumner county, including that of Belle Plaine, when Glenn M. Jones was appointed as agent of plaintiff for Sumner county. An injunction action was begun with respect to the agency, upon which testimony was taken for several days, and after the closing of the evidence but before the decision was reached the

parties went into conference and entered into an agreement of settlement which was entered into March 29 and reduced to writing. It provided that plaintiff should purchase from the defendants certain furniture, fixtures, shop equipment and some implements in Wichita, at a price of $1,337.50; that the plaintiff should pay defendants the sum of $477.86 for rent, salary and freight on goods to Wellington, and also pay defendants $400 for certain incidental items and expense. It then provided that an inventory should be taken immediately of all the goods shipped to defendants by plaintiff then in buildings occupied by defendants at Wellington and Wichita. After the completion of the inventory defendants were to pay to first party for the goods shipped to defendants that were not on hand and could not be produced at the time of the inventory, with the exception that notes taken by defendants in settlement for goods should be accepted by the plaintiff, the price to be paid to be in accordance with the list prices and discounts set forth in a prior contract. The plaintiff further agreed to pay the defendants the sum of $1,600 for certain tractors when the same were delivered in Wichita, and also agreed to accept from defendants all goods taken in the inventory and credit defendants for the same at the invoice price. It was provided further that plaintiff was to—

"Use his best efforts in making satisfactory arrangements for the sale of their products, with the Citizens Hardware and Implement Co., Garden Plaine, Kan.; Herman L. Tjaden, Clearwater, Kan., and Harold Koger, Belle Plaine, Kan., in their respective territories."

The plaintiff further agreed to carry over and assume the lease on the building in Wichita, Kan., at a monthly rental of $125. There was a stipulation that plaintiff should not assume any obligations contracted by the second party except that it was to pay the sum of $336, the balance due on a specified motor truck. It was finally provided that upon the fulfillment of this agreement both parties should be released from all contracts and claims prior to this date, and the defendants were to withdraw a lawsuit now pending in the district court of Sedgwick county, and each party was to pay his own costs. The inventory followed immediately after the agreement, both being accomplished on March 29 and 30, and there is testimony that everything had been accounted for except a harrow, which was charged to defendants and paid for in the final adjustment. When the settlement was finally consummated, keys to buildings were delivered and a check made by defendants to plain-

tiff for $1,092.95 was accepted by the plaintiff. The manager of plaintiff company at that time said to defendants, "he hoped there would be no hard feelings, as everything was settled now." Plaintiff went into possession of the goods, and when defendants offered to deliver goods to defendants at Wichita, plaintiff told them it was not necessary, as it would have an agency at Belle Plaine to handle them, and it appears that Koger was selected as a subagent at that place and served in that capacity about six months thereafter. Plaintiff offered testimony to the effect that some goods at Belle Plaine not inventoried had been sold by Koger for which payment had not been made. Special questions on the contested points were submitted to the jury, with answers, which follow:

"1. Was all the machinery taken in the invoice at Belle Plains on the floor at Belle Plaine on the date the invoice was taken? A. Yes.

"2. Did the defendants or either of them offer to deliver the machinery at Belle Plaine to the Wichita house? A. Yes.

"3. Did Mr. Thompson, acting for the Massey Hardware Co., accept delivery of the machinery at Belle Plaine, Kan., on the 30th day of March, 1929? A. Yes.

"4. Did Mr. Koger work for Mr. Jones and sell Massey-Harris farm machinery after the date of the contract, March 29, 1929? A. Yes.

"5. Were any machinery, repairs or other items, which were shown by the inventory to be at Belle Plaine, Kan., sold by Mr. Koger before the date of the inventory? A. No.

"If you answer the above question in the affirmative, state which articles were sold. A.———"

Plaintiff makes a general attack on the findings and judgment, contending that they are unwarranted by the evidence. The main controversy arises upon the settlement that was made. It may be said that the law looks with favor on compromises and settlements of disputes, and where parties enter into a settlement which is free from fraud neither party is permitted to repudiate it. (*Lewis v. Kimball*, 103 Kan. 173, 173 Pac. 279, and cases cited.) In connection with the settlement in question an inventory was at once made, including a list of the goods on hand as well as those not on hand. Evidently it was the purpose of both parties to close out completely the relationship which had existed between them and make a final and complete settlement of their affairs. It is shown that defendants refused to yield possession of the goods or the keys to buildings until everything was complete, and also that certain subagents should be cared for by plaintiff. Koger, who had been

in charge at Belle Plaine, was again placed in charge as a sub-agent and acted in that capacity for a considerable time after the settlement. Plaintiff subsequently raised a question whether all of the goods which had been in charge of Koger had been accounted for in the settlement. It insists that some of the testimony upon which the findings and verdict are based is incredible and untrue. There is sharp conflict in the testimony, and much of that given in behalf of plaintiff is recited, but these conflicts are matters for the determination of the jury. On an appeal, as so often decided, the testimony which tends to support the findings and judgment and every reasonable inference deducible therefrom must be accepted and that adduced by the adverse party in conflict with it ignored. A vigorous attack is made upon finding number five; in which a negative answer was given to the question, "Were any machinery, repairs or other items which were shown by the inventory to be at Belle Plaine, Kan., sold by Mr. Koger before the date of the inventory?" There was testimony that about three articles were sold by Koger prior to the inventory, and we find no evidence contradictory of the making of these sales at that particular time. Koger did testify that the sales were made, but that no money was handed over to defendants for these goods. It is urged that a jury has no right to disregard uncontradicted evidence and that to do so is reversible error. Laying aside the point that the jury may disbelieve the testimony of a witness, we still have the question whether or not the finding is a material one which should operate to overturn the verdict. The court is not warranted in setting aside a general verdict and judgment because of a finding upon an immaterial matter or even upon an error without prejudice. The question asked was upon a detail of the evidence and not upon an issuable fact. Whether the goods were sold before the inventory was taken would not have settled the question whether defendants had paid for them or should pay for them. The real issue was whether, in view of the settlement made between the parties, the defendants were liable to plaintiff for them. An affirmative answer would not have established the liability of defendants. The question would have still remained, assuming that the sale was made before the inventory, Were the defendants indebted to plaintiff for the goods so sold or should plaintiff have looked to Koger or some one else for their value? We think the finding

cannot be held to be inconsistent with the verdict, nor is it one which should overthrow it.

A large number of objections to the admission of testimony are mentioned by plaintiff and attention called to them in the lump as said to appear on twenty-six different pages of the record, without setting them out separately, with the rulings on each of them. We have read and considered these objections, and disposing of them as they have been presented, we hold there was no material error in the rulings.

Finding no material error in the record, the judgment is affirmed.