No. 41,683

John R. Nauman and Frances Nauman, *Appellees*, v. Kenosha Auto Transport Company, an Ohio Corporation, *Appellant*.

(349 P. 2d 931)

Opinion filed March 5, 1960.

*Marion C. Miller*, of Kansas City, argued the cause, and *Edward A. Benson, Jr.*, of Kansas City, was with him on the briefs for the appellant.

*Wash H. Brown*, of Kansas City, argued the cause, and *Norman B. Sortor*, of Kansas City, was with him on the briefs for the appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action for breach of an oral contract wherein it was alleged the defendant agreed, in settlement of the parties' legal differences, to pay the plaintiffs the sum of $2,500 to

forbear an action for injunctive relief concerning an existing nuisance and for damages already occasioned by the nuisance.

The trial court found an agreement was made, as a compromise settlement of the plaintiffs' claims, which was approved by the defendant and later repudiated, whereupon judgment was entered for the plaintiffs in the sum of $2,500 and costs.

On appeal to this court two basic questions are presented: (1) Whether there was any evidence to justify the trial court's finding that an agreement had been made; and (2) whether the contract, if made, came within the purview of the statute of frauds.

The defendant, Kenosha Auto Transport Company (appellant), has its location on the north side of the highway on real estate a few miles west of Kansas City, Kansas. The real estate is owned by Nick Demos and his wife. Mr. Demos is the president and a stockholder of the company which has its principal office at Kenosha, Wisconsin. The resident manager at the Kansas City location is Mrs. Frances Myers. She is not an officer or stockholder of the company but an employee, and her immediate superior is Mr. Demos.

The plaintiffs, John R. Nauman and Frances Nauman (appellees), owned and lived on real estate adjoining and immediately north of the property used by the defendant, and their property is geographically located approximately twenty to twenty-five feet below the surface level of the property used by the defendant.

For some time prior to the filing of the petition herein, the plaintiffs were subjected to noxious odors emanating from sewage which drained from the sewage disposal system located on the property occupied by the defendant onto and across the property owned by the plaintiffs.

The controversy concerning the sewage overflow led to negotiations between the parties and their respective attorneys. The issues presented on this appeal stem from these negotiations.

The plaintiffs alleged in their petition that the Kenosha Company through its duly authorized and acting agent, Frances Myers, orally agreed among other things to pay the plaintiffs the sum of $2,500 if the plaintiffs would forbear and refrain from resorting to the courts. That such agreement was made as a compromise settlement of plaintiffs' claims. It further alleged that plaintiffs, relying on the promise of the Kenosha Company to pay the sum of $2,500, did refrain and forbear from filing an action in the courts for

damages and other relief; but that notwithstanding such forbearance defendant has failed, refused and neglected to pay plaintiffs the sum of $2,500 in compromise and settlement as agreed.

A jury was waived and the matter was tried to the court. The plaintiffs' attorney, in his opening statement, for the first time in the lawsuit announced that the agreement was "that the defendant would pay damages in the sum of $2,500, and purchase outright the property owned by the plaintiff for a total purchase price of $9,250." He stated the purpose for buying the Nauman property was that no relief could be had other than by an extension of the sanitary sewer system, and for that reason the defendant agreed to purchase the house occupied by the Naumans to avoid further lawsuits from the Naumans.

Mr. Nauman testified that he authorized his attorney, Mr. Sortor, to settle on the basis of $9,250 for the house and $2,500 damages. Mr. Sortor testified that he and the defendant's attorney, Mr. Benson, conferred many times, and the defendant's attorney suggested submitting the matter to their respective clients in the forepart of August, 1956. He testified:

"Q. What was again, Mr. Sortor, the agreement that you and Mr. Benson made?

"A. The final agreement was for $9,250.00 for the sale of the property, the reduced property price to be because of the fact that the Naumans then were to be granted the right to occupy those premises until January 1, 1957, and a figure of $2,500.00 as damages for the damages that the Naumans felt they had suffered prior to that time as a result of this pollution.

"Q. Did Mr. Benson make any statement to you about how he got the authority to make that agreement?

"A. That he had called Demos in California, that he had finally caught Demos in California, that they had been negotiating back and forth by letter, and he finally said 'He moves around so much that the only way I could catch him was by telephone in California.'

"Q. Did he say that Mr. Demos had approved it?

"A. He did."

Shortly thereafter Mr. Benson informed Mr. Sortor that the settlement agreement was off; that Mr. Demos had returned to Kenosha, Wisconsin, and after discussing the matter with the company's chief counsel he changed his mind. Mr. Sortor then testified:

"Q. Did he [Mr. Benson] make any observation with reference to his reaction to this?

"A. He said he was sorry. He said, 'My client has broken her word, I am sorry. It is up to you and the Courts, now. I have done all I can.'"

No objections to any evidence are disclosed by the record as abstracted.

It was stipulated that no papers were ever signed for purchase of the Nauman property; that no steps were ever made in taking possession; and that no money was ever paid the Naumans.

There was other evidence presented disclosing the value placed upon the Nauman property was the result of an independent appraisal made at the mutual request of the parties. The value placed upon the property by the appraisers was $9,250.

The defendant attempted by its evidence to show the basis for negotiations was a total purchase price for the Nauman property which began by a demand for $13,500, and subsequently as a result of further negotiations was reduced to $12,500.

It appears from the entire record presented the trial court had sufficient competent evidence upon which to predicate its findings that a contract had been made, and that Mr. Benson, attorney for the appellant corporation, was authorized to make the settlement.

It has been repeatedly held that in considering the evidence on appellate review a verdict or finding of the facts made by the trier of the facts, which is supported by the evidence, will not be disturbed on appeal. The long-established rule of this jurisdiction is that a general finding made by a trial court determines every controverted question of fact in support of which evidence has been introduced, and that a general finding by the trial court raises a presumption that it found all facts necessary to sustain and support the judgment. (*Dryden v. Rogers*, 181 Kan. 154, 309 P. 2d 409; *Watkins v. Layton*, 182 Kan. 702, 324 P. 2d 130; and *Atkinson v. State Highway Commission*, 184 Kan. 658, 339 P. 2d 334.)

The evidence disclosed that Mr. Benson, counsel for the appellant, worked through Mrs. Myers concerning negotiations, but for final approval of the agreement resulting from such negotiations the consent of Mr. Demos, an officer and president of the defendant corporation, was procured. On cross examination it was elicited from Mrs. Myers that during the course of negotiations she had requested the appellees' attorney to forbear and refrain from referring the matter in question to the courts for judicial determination until she returned from her vacation. There was other testi-

mony from Mr. Sortor indicating that he was asked to forego injunctive proceedings until Mrs. Myers could consult with Mr. Benson who was out of town.

The principal contention of the appellant is that the contract comes within the purview of the statute of frauds.

The position taken by the appellant is that the negotiations terminated in an alleged oral contract providing for the sale of real estate, and pursuant to G. S. 1949, 33-106, no action can be brought unless such contract for the sale of real property is in writing. It is conceded by the appellees that there were no writings whatever pertaining to the sale of the appellees' real estate, that there was no change of possession from sellers to anyone, and that no part of the contemplated purchase price or any other money was paid. The appellant therefore concludes the facts do not bring this case within any of the well-recognized exceptions to the statute of frauds. The appellant argues the contract is indivisible, relying on *Paton v. Paton*, 152 Kan. 351, 103 P. 2d 826, and the cases cited therein.

Under the propositions of law heretofore stated, it must be presumed that the trial court found there were two separate and distinct agreements, the first of which was an oral agreement to pay $2,500 damages, and the second was an oral agreement to purchase real estate owned by appellees in order to avoid re-occurring claims for damages.

There were two separate and distinct considerations for such agreements. The consideration for the $2,500 damages was to settle the appellees' claim, not only for the inconvenience they had sustained from the nauseous odors emanating from the sewage disposal system of the appellant, but also for their inability to use the west portion of their land by reason of the swampy condition of the land resulting from the sewage draining over this land. There was also forbearance by the appellees. They did not bring an action to enjoin the continuance of the nuisance or for damages already suffered.

The motive and consideration for the appellant's desire to purchase appellees' real estate was to avoid re-occurring claims for damages by reason of the fact that corrective measures were impossible short of a sanitary sewer system. It should be noted that the purchase price was predicated on an appraisal by competent real estate appraisers, and was $750 less than the $10,000 the appellees were asking. The reduced price was accepted by the appellees,

subject to their being permitted to occupy the premises rent-free until January 1, 1957, to enable them to acquire additional land on which to build another home.

The petition alleged a cause of action for recovery under the first agreement only, and at the conclusion of all the evidence, had a proper motion been made, the trial court would have been in a position to strike all evidence relating to the second agreement. The presumption is that the trained mind of the trial judge was not led astray nor his judgment perverted by the fact that some incompetent testimony had been aired at the trial. (*Reeves v. Sroade*, 124 Kan. 423, 260 Pac. 609; and *McCready v. Crane*, 74 Kan. 710, 88 Pac. 748.)

Under the facts and circumstances presented by this case, the authorities cited by the appellant, concerning the indivisibility of a contract, do not apply.

The appellant asserts that the trial court should have sustained the demurrer to the petition because it failed to allege that the Kenosha Company's agent, Mrs. Myers, was acting within the scope of her authority. Nowhere in the record does it appear that this question was presented to the trial court. The demurrer itself did not set forth this reason as one of the grounds for the demurrer. Under such circumstances the appellant is not entitled to present it for the first time on appellate review.

The law favors the compromise and settlement of disputes, and when parties, in the absence of any element of fraud or bad faith, enter into an agreement settling and adjusting a dispute, neither party is permitted to repudiate it. (*Lewis v. Kimball*, 103 Kan. 173, 173 Pac. 279; and *Massey-Harris Co. v. Horn*, 132 Kan. 206, 294 Pac. 666.) After the parties have agreed upon a compromise of a *bona fide* dispute, the courts will not, in the absence of any element of fraud or bad faith, look into the merits of the original controversy to discover which was in the right. (*Lewis v. Kimball*, supra; and 11 Am. Jur., Compromise and Settlement, § 7, p. 253.)

The judgment of the lower court is affirmed.