No. 43,776

INTERNATIONAL MOTOR REBUILDING Co., a Corporation, *Appellant,*
v. UNITED MOTOR EXCHANGE, INC., a Kansas Corporation, and
JOHN TUTTLE and JERRY LIVINGSTON, *Appellees.*

(393 P. 2d 992)

Opinion filed July 14, 1964.

*Orlin L. Wagner,* of Wichita, argued the cause, and *Wilbur D. Geeding,* of Wichita, was with him on the briefs for the appellant.

*Marvin J. Martin,* of Wichita, argued the cause, and *Donald G. McFerson, John B. Wooley,* and *Jimmie E. Grey,* all of Wichita, were with him on the briefs for the appellees.

The opinion of the court was delivered by

HATCHER, C.: This appeal stems from a controversy over a compromised settlement of accounts and suit on a note given as consideration therefor.

Plaintiff was in the business of purchasing and rebuilding old automobile motors for resale. The defendants were in the business of overhauling automobiles and replacing worn motors with rebuilt ones. The defendants sold worn motors to plaintiff and purchased rebuilt motors. During the period from July, 1958, to November 7, 1960, the transactions amounted to many thousands of dollars.

On May 3, 1961, some six months after the last transaction between the parties, Mr. James A. Barefield, plaintiff's secretary and treasurer, went to defendants' place of business in Wichita, Kansas and demanded a settlement of accounts. Plaintiff's records re-

flected an amount of $9,500.00 due it. During the negotiations various adjustments and concessions were made on both sides and an agreed settlement was arrived at in the sum of $7,232.00.

On May 4, 1961, defendants gave plaintiff a check in the amount of $732.00 and a note in the sum of $6,500.00. The note was payable in twenty-six weekly installments of not less than $250.00 each. On the same day the plaintiff gave defendants a letter by which it agreed to accept 68 used motors and credit payment on the note in the amount of $2,350.00. The note was signed by United Motor Exchange, Inc., as principal, and John Tuttle and Jerry Livingston as guarantors.

The defendants made payments in the amount of $2,000.00 during the period from May 8, to September 7, 1961. No motors were shipped for credit on the note.

On September 22, 1961, the plaintiff served upon each of the defendants by registered mail notice that the note was in default and demanded payment in full.

On September 28, 1961, the plaintiff not having received satisfaction, this action was commenced. The petition alleged the execution of the note which was attached to the petition, default in payments, and prayed for judgment for the $4,500.00 due with interest.

On October 6, 1961, eight days after the action was commenced, defendants addressed a letter to plaintiff asking if it would accept used motors for credit on the note in accordance with the letter of May 4, 1961. The record discloses no reply.

On December 14, 1961, the defendants filed their answer. The execution of the note and the payment of $2,000.00 thereon was admitted. The answer alleged in part:

"On or about May 4, 1961, Plaintiff through its agent, J. H. Barefield, Secretary-Treasurer of Plaintiff corporation, came to Defendants and requested payment of balance due and owing on its account. Plaintiff submitted to Defendants its records purporting to show the correct charges and credits concerning Defendants' account. These accounts of Plaintiff were erroneously supposed by Defendants to be true and correct and were relied on by Defendants in their actions as hereinafter set forth.

. . . . . . . . . . . . . .

"The consideration received by Defendants for making said agreement and the execution and delivery of the Promissory Note and letter above referred to was the cancellation of the open account alleged to be. in the amount of $6,500 (representing the balance allegedly due and owing to Plaintiff by Defendant, United Motor Exchange, Inc.) and the right to repay part of the alleged debt through the delivery of 68 exchange engines for a price not

to exceed $2,350.00 (as set forth in Exhibit '1'), and the right to repay the balance as set forth in said Promissory Note."

It was alleged that the accounts submitted by plaintiff to the defendants were erroneously supposed by defendants to be true and correct and were relied on by defendants in making the settlement agreement. The true facts were not known by defendants until on or about October 20, 1961. The erroneous facts were the basis upon which the agreement was made.

The answer further alleged that the actual balance due plaintiff on the open account was $580.86. The prayer requested that the settlement agreement and the note be set aside and that the plaintiff have judgment in the amount of $580.86.

At the close of the evidence, which will be considered later in detail, the trial court found:

"The agreement between the parties and Promissory Note executed pursuant thereto dated May 4, 1961, was based upon a mutual mistake of fact and should be and the same is hereby set aside.

"The true amount actually due and owing to Plaintiff from the Defendants is $1,609.86."

Plaintiff has appealed, contending that finding of the trial court was not supported by substantial evidence and that the court erred as a matter of law in setting aside the compromise and settlement agreement.

We are inclined to agree with appellant's contention, but before reviewing the evidence a discussion of the general principles of law covering the effect of a compromise and settlement may be helpful.

The law favors the amicable settlement of disputes. Compromise as a mode of adjusting claims should be encouraged by the courts. It would be against public policy to prevent compromise of claims by compelling all controversies to be adjusted by litigation. (*Logdson v. Hudson,* 83 Kan. 500, 112 Pac. 118; *Schnack v. City of Larned,* 106 Kan. 177, 186 Pac. 1012; *Massey-Harris Co. v. Horn,* 132 Kan. 206, 294 Pac. 666.)

A compromise does not anticipate that the rights of the parties have been settled with exact nicety. Courts should not be concerned with the exactness of the accounting between the parties in considering the validity of a compromise. A compromise may be valid although the amount agreed to be paid is much more or much less than the amount actually due. Inadequacy of consideration does not invalidate a compromise if fairly made. (*Minor*

*v. Fike,* 77 Kan. 806, 93 Pac. 264; *Robinson v. Railway Co.,* 96 Kan. 137, 150 Pac. 636; *Barton v. Oil Co.,* 112 Kan. 436, 211 Pac. 608.) In *Sutherland v. Sutherland,* 187 Kan. 599, 358 P. 2d 776, it is said at page 605 of the opinion:

"It is now the settled law in Kansas where one in good faith asserts a claim not obviously invalid, worthless or frivolous, and which might be thought to be reasonably doubtful, the forbearance to prosecute such a claim will furnish a sufficient consideration for a promise of settlement and compromise of such claim. (*Reed v. Kansas Postal Telegraph & Cable Co.,* 125 Kan. 603, 264 Pac. 1065, and authorities cited therein.)

"In *Shrader v. McDaniel,* 106 Kan. 755, 189 Pac. 954, it was held:

" 'While compromises and settlements, like other contracts, must be supported by a consideration, it is enough to support the agreement that there was a doubtful question, and where the parties to a compromise act in good faith and one agrees to pay, and the other to accept a certain sum in satisfaction of his liability upon a claim, there is sufficient consideration for the compromise.' (Syl. ¶ 4.)"

Forbearance to sue is the usual, and a valid consideration for a compromise settlement. A party has a right to sue where a claim is reasonably doubtful and the opposite party has a right to avoid litigation by a settlement of the doubtful claim. (*Ralston v. Mathew,* 173 Kan. 550, 250 P. 2d 841.) In *Reed v. Kansas Postal Telegraph & Cable Co.,* 125 Kan. 603, 264 Pac. 1065, it was held:

"Where one in good faith asserts a claim not obviously invalid, worthless or frivolous, and which might be thought to be reasonably doubtful, the forbearance to prosecute such a claim will furnish a sufficient consideration for a promise of settlement and compromise of such claim." (Syl.)

Neither financial distress nor threat nor fear of litigation is sufficient to avoid a compromised settlement if otherwise made in good faith. (*Rennolds v. Guthrie,* 103 Kan. 829, 177 Pac. 359.) In *Kiler v. Wohletz,* 79 Kan. 716, 101 Pac. 474, it was held:

"Where there has been a valid agreement to compromise it is not admissible to go back of the settlement to determine who was in the right in the original contention.

"The fact that the creditor insisted that the larger amount was due and that he threatened to enforce his claim by a civil action constitutes neither fraud nor legal duress." (Syl. ¶¶ 2, 3.)

A compromise may be set aside where both parties are mistaken as to the facts which form the basis of the compromise. However, the fact that one of the parties made an error in calculating the items of his claim, which is accepted by both parties, is not enough to invalidate the compromise. (*Bottom v. Harris,* 108 Kan. 7, 193 Pac. 1058; *Brooks v. Hall,* 36 Kan. 697, 14 Pac. 236.)

The conclusiveness of a compromised settlement was stated in *Nauman v. Kenosha Auto Transport Co.*, 186 Kan. 305, 349 P. 2d 931, as follows:

"The law favors the compromise and settlement of disputes, and when parties, in the absence of any element of fraud or bad faith, enter into an agreement settling and adjusting a dispute, neither party is permitted to repudiate it. (*Lewis v. Kimball*, 103 Kan. 173, 173 Pac. 279; and *Massey-Harris Co. v. Horn*, 132 Kan. 206, 294 Pac. 666.) After the parties have agreed upon a compromise of a *bona fide* dispute, the courts will not, in the absence of any element of fraud or bad faith, look into the merits of the original controversy to discover which was in the right. (*Lewis v. Kimball*, supra; and 11 Am. Jur., Compromise and Settlement, § 7, p. 253.)" (p. 310. See, also *Flott v. Wenger Mixer Manufacturing Co.*, 189 Kan. 80, 367 P. 2d 44.)

We will review the evidence submitted by appellees which they contend is sufficient to support the trial court's finding that the compromise settlement was based on mutual mistake of fact and should be set aside. In doing so we are mindful of the well established rule that where the trial court's findings are attacked because of insufficiency of the evidence this court should not weigh conflicting evidence. It may only review the record for the purpose of determining whether there is any substantial evidence to support the findings. If there is any substantial evidence the findings must stand. (*White v. Rapid Transit Lines, Inc.*, 192 Kan. 802, 391 P. 2d 148; *Green v. Kensinger*, 193 Kan. 33, 392 P. 2d 122; *Finnell v. Patrons Co-Operative Bank*, 193 Kan. 354, 394 P. 2d 116.) However, we are of the opinion that there is a basis in this case for the application of the rule that where there is no dispute in the testimony and it all points to but one conclusion, the question is one of law and not of fact. (*Cain v. Grosshans & Petersen, Inc.*, 192 Kan. 474, 389 P. 2d 839.)

It will be understood that the appellant has never conceded a mistake of fact. It introduced as evidence the same records as were used in reaching the compromise settlement and contended they were correct.

The appellees presented three witnesses.

Mr. Livingston, part owner of the appellee corporation and one of the guarantors on the note in controversy, testified that he was called into a conference on the 3rd or 4th of May, 1961, in which Mr. Barefield and Mr. Tuttle were present. We quote from the record:

"Q. What was that discussion?

"A. Well, the whole discussion was over the amount of money that we owed International Motor Rebuilding Company and the amount of blocks to be returned.

"Q. Had you ever been advised what your actual balance was with the International Motor Rebuilding Company?

"A. No I never knew how we stood as to the balance and credits."

It is clear that there was no mistake on the part of the appellee, Livingston. He did not know and made no effort to discover the actual balance due.

Mr. John S. Hoover, an accountant testified that he had audited the documents and records which appellee corporation had in its files—all available documents that were present, and from his examination and frequent conferences with Mr. Tuttle arrived at a balance due appellant by appellees in the sum of $1,193.37. He did not remember whether the auditing was done before or after the action was commenced. It is alleged in the answer that the claimed missing credits were not known to defendant until October 20, 1961. It would appear the audit was not made until after the petition was filed September 22, 1961.

Mr. John R. Tuttle, president in charge of books, records and transactions of the appellee corporation and a guarantor of the note in controversy, testified as the principal witness for appellees. His testimony will be presented in detail as follows:

"Q. Did you, and Mr. Brooks have any conversation leading up to the execution and delivery of these instruments?

"A. Yes. On May 3d Mr. Barefield—I don't know whether he called me or whether he just came to the office. He was at our office on the 3d of May and we went through the procedure of counting blocks and the motors that we had here at 145 Pattie and *when we started to figure it we knew we owed him but didn't know how much.* [Emphasis supplied.]

"Q. Did Mr. Brooks show you any of their records?

"A. Yes. He had copies and a carbon copy of their accounting of the blocks that were outstanding and the engines we owed him for. At that time I took their records and tried to sit down and determine a figure of how much we owed them, which was difficult because I didn't have all our records available. They were stored in various places from 1958 to 1961.

"Q. Did you use his records to arrive at any kind of figure?

"A. Yes we did.

. . . . . . . . . . . . . .

"Q. *Did you agree with it?*

"A. *Not entirely. We didn't agree with the amount of outstanding blocks that he had.* [Emphasis supplied.]

"Q. Did he tell you how he arrived at this figure of what was due and owing?

"A. Yes he did.

"Q. What did he tell you?

"A. That these were the figures that were given to him in Houston by their accounting department."

The witness was given a copy of the appellant's work sheets and audit sheets. He worked the evening of May 3rd, trying to arrive at a figure. He stated:

". . . At this particular time I also stated to Mr. Brooks that we didn't have enough facts and figures in our possession in order to compile the thing like it should be."

The witness testified further:

"Jerry Livingston and I weren't entirely satisfied with the figures so we didn't reach an agreement on May 3rd.

"The next day, on May 4th, he [Barefield] came down at about ten o'clock and we again started to recap the figures and at that time we arrived at a figure of $7,200.00.

"Q. Exactly $7,200.00?

"A. $7,232 and some odd cents as I remember, and we didn't know whether to sign the note or not. We tried to call your office and you were out of town and we tried to call Mr. Hoover's office and he was gone, *and we were given the alternative to either sign the note or he was going to start proceedings against us.*

"*At that time we were in the process of getting a loan from the SBA and we decided to go ahead and sign the note and agree on sixty-eight blocks until such time as we could bring our figures up to date.*

"Q. You said something about legal action against you. Can you give us the words he used?

"A. He told me exactly that he had one day, May 4th, to do business in Wichita and he had just bought a place in Dallas and had to get back there, and to either sign the note and be done with it or he was going to take legal action to close us up." [Emphasis supplied.]

It would serve no useful purpose to draw specific conclusions from the testimony of appellees. Credible conduct on their part would not be reflected. It will suffice to say that there was no mutual mistake of fact which determined the conduct of the parties. The appellees knew what they were doing and had a definite purpose for doing what they did. They entered into the compromised settlement for the purpose of delaying the payment on the amount due and avoiding litigation while attempting to get financial assistance from the federal government. They cannot now be heard to say that the agreement should be set aside be-

cause they acted in bad faith or with negligence and indifference, intending to challenge the agreement after the purpose of their delaying tactics had been accomplished. ·

The general rule of law applicable to the facts before us is summarized in 11 Am. Jur., Compromise and Settlement, § 32, p. 280, as follows:

". . . Generally speaking, if there was a mutual understanding as to the payment and acceptance of something in full settlement of the controversy, without fraud or unfair conduct on either side, the compromise cannot be avoided for mistake of fact although subsequent events may show that either party made a bad bargain, because of a wrong estimate of the damages which would accrue. If a mistake is made as to some fact which, though connected with the transaction, is merely incidental, and not a part of the very subject matter or essential to any of its terms, or if the complaining party fails to show that his conduct was in reality determined by it, the mistake is not ground for relief, either affirmative or defensive. . . ."

The mistake must be such that the parties are unintentionally caused to do something they did not intend to do. (*Janicke v. Telephone Co.,* 96 Kan. 309, 311, 150 Pac. 633.)

We must conclude as a matter of law that there was no substantial evidence to support the trial court's finding that the compromise and settlement agreement, which formed the consideration for the promissory note and which was the basis for this action, was based upon mutual mistake of fact.

The conclusion reached renders unnecessary the consideration of appellant's contention that the agreement was ratified on numerous occasions. A valid agreement requires no ratification.

The judgment is reversed with instructions to enter judgment for the plaintiff for the balance due on the promissory note in the sum of $4,500.00 with appropriate interest.

APPROVED BY THE COURT.