The Federal Betterment Company v. Henry A. Blaes et ux.

No. 14,825   (88 Pac. 555.)

SYLLABUS BY THE COURT.

1. PETITION—*Demurrer—Defect of Parties.* A demurrer to a petition for a defect of parties defendant should point out the parties improperly omitted, and where this is not done the overruling of the demurrer cannot be regarded as erroneous.

2. OIL-AND-GAS LEASE — *Abandonment — Lessor's Rights Not Waived.* An oil lease provided that if a well was not completed on the leased premises within six months it could be kept in force by a quarterly payment of ten dollars until one was completed; that if at any time after a well was drilled six months should elapse without any revenue being received therefrom and without any further drilling being done the lease should be deemed abandoned. An attempt was made to drill a well which proceeded until a depth of about 1000 feet was reached; then the casing was pulled out and the hole was plugged; no further drilling was done. More than six months thereafter the lessors brought a suit to declare the lessee's rights lost by abandonment. *Held:* (a) There being evidence from which it might be inferred that the drilling done showed the existence of oil in sufficient quantity to warrant shooting, which was not attempted, the

court was justified in finding that the operations described amounted to the drilling of a well within the meaning of the contract, and that the cessation of operations for six months thereafter constituted an abandonment of the lease. (b) The receipt of a quarterly payment after the operations described took place, but less than six months thereafter, did not commit the lessors to the position that a well had not been drilled, since it was the completion of a well that was to end such payments, and the court was justified in further finding that a well had not been completed within the meaning of the lease.

Error from Montgomery district court; Thomas J. Flannelly, judge. Opinion filed January 5, 1907. Affirmed.

*T. H. Stanford,* for plaintiff in error.

*Fritch & Bertenshaw,* for defendants in error.

The opinion of the court was delivered by

Mason, J.: Henry Blaes and his wife executed an oil-and-gas lease on a quarter-section of land. Various assignments were made, in virtue of which the Federal Betterment Company succeeded to all rights of the lessee excepting what are called the oil rights on the north half of the land, which passed to and remained in the Illinois Valley Oil and Pipe-line Company. The lessors, claiming that under the terms of the lease they were entitled to consider it abandoned by reason of certain omissions of the assignees, brought a suit for its cancelation against the Federal Betterment Company. Upon a trial without a jury the court rendered judgment against the defendant, from which it prosecutes error.

The first claim of error is based upon the failure of the plaintiffs to make the Illinois Valley Oil and Pipeline Company a defendant. We do not find, however, that this matter was so présented to the trial court as to preserve any question for review. A demurrer was filed and overruled, one of the grounds of which was that there was a defect of parties defendant. The de-

murrer did not indicate what individual or corporation had been left out whose presence was essential to the determination of the suit and to the protection of the defendant's rights, and therefore it was not error to overrule it. "A demurrer for non-joinder of parties must refer directly to the defect, and must designate the parties improperly omitted." (15 Encyc. Pl. & Pr. 749. See, also, *Jaeger v. Sunde,* 70 Minn. 356, 73 N. W. 171.) While this rule does not prevail in all jurisdictions we think it a fair and wholesome one, quite analogous to that declared in *Gilmore v. Norton,* 10 Kan. 491, and approved in *Ambrose v. Parrott,* 28 Kan. 693, requiring that a motion to make a pleading more definite shall point out wherein it is uncertain.

The same point was attempted to be raised after the issues were made up by a motion to require the plaintiffs to make the Illinois company a party, but it was joined with a motion for a continuance, and the record merely shows a denial of the latter motion. Moreover, it is not apparent how the defendant suffered any injury from the absence of the other company, and unless such prejudice appears no error is shown. (15 Encyc. Pl. & Pr. 752; *Anderson v. Wolf,* 41 N. Y. Supr. Ct. 571.) The absence of the Illinois company did not prevent the defendant from making any defense in its own behalf which could have been made had that company been in court. There was no showing that the decree cutting it off from any interest in the land under the lease subjected it to any claim on the part of the Illinois company. Such decree ended the responsibilities of the defendant under the lease and severed its relations with the plaintiffs. If as a result the Illinois company was in any way embarrassed, that was nothing of which the defendant could complain.

The other assignments of error may be embraced in the single contention that the evidence did not support the judgment. No special findings were made, and the action of the trial court must be upheld if it is consistent with any reasonable view of the testimony. The

portion of the lease necessary to be considered in order to determine this matter reads as follows:

"In case a well is not completed upon said land within six months from the date hereof lessee will pay to the lessors for the delay the sum of ten dollars each quarter year thereafter, in advance, until said well be completed or this lease shall be surrendered as hereinafter provided. Said payments for delay may be made by depositing the same to the credit of the lessors in the People's State Bank at Cherryvale, Kan.

"The lessors shall have the right to declare a forfeiture of this lease upon failure of the lessee to pay any quarter yearly sum which may become payable as above provided for delay in completing a well.

"If at any time after a well or wells have been drilled six months shall elapse without any revenue being received by the lessors from said well or wells, and without any further drilling being done by the lessee, this lease shall be deemed abandoned and all rights of the lessee thereunder ended, except the right to remove the machinery and other property placed by it upon said land."

The lease was executed June 30, 1898. The evidence showed that no well was completed within six months, and with the expiration of that time the payment of the stipulated sum of ten dollars a quarter began and was continued up to and including October 1, 1902; that in July, 1902, an attempt was made to drill a well which proceeded until a depth of about 1000 feet was reached, when the casing was pulled out and the hole was plugged; that no further drilling was done. This suit was begun in June, 1903. The plaintiffs claim that within the terms of the third paragraph of the lease above quoted the evidence already recited establishes: (1) That a well had been drilled; (2) that six months had then elapsed without any revenue being received from it; (3) that no further drilling had been done; and as a consequence (4) that the lease was to be deemed abandoned and all rights of the lessee or his assignees thereunder ended. Against this contention the defendant argues that the product of the drilling was not properly a well at all; that it was a

mere "dry hole"; that it was not a well within the meaning of the word as employed in the paragraph relied upon by the plaintiffs. The use of the term "well," however, is not conclusive that a producing well was intended. References are continually made by courts and text-writers to "dry wells" and "non-productive wells." In *Penniman v. Winner,* 54 Md. 127, persons who bargained for an "oil-well" contended that inasmuch as what they received did not yield oil in commercial quantities it did not respond to this designation. The court said:

"The thing sold here was an oil-well, and it is admitted the company got an oil-well, but the objection is that it wholly failed to answer the purposes for which it was bought. It did not yield enough to justify working it. This fact, however, does not constitute a *failure of consideration."* (Page 135.)

In *Smith v. South Penn. Oil Co.,* 59 W. Va. 205, 53 S. E. 152, in discussing the effect of the word "well" employed in a deed, it was said:

"What kind of a well? Some are productive and some are unproductive, and it costs a considerable amount of money to put down either kind. The question is not what, in point of fact or law, constitutes a well, but what is a well within the meaning of the deed." (Page 208.)

The well or hole involved in the present case was never shot, and there was testimony that the reason for this was that the indications were not such as to justify it. But there was also testimony that there was some oil in the well and that other wells in the neighborhood that showed no more favorably at the same stage had produced oil in paying quantities after being shot. The pulling up of the casing was certainly strong evidence that those in charge of the work believed in good faith that its further prosecution was useless; still the trial court may have concluded that they were mistaken or perhaps insincere. Under these circumstances can it be said, as a matter of law, that

a well had not been drilled within the spirit of the contract?

Contracts by which the owner of land surrenders a part of his rights with respect to the oil and gas therein, generically called leases, require and are given treatment peculiar to themselves. In *Ohio Oil Co. v. Detamore,* 165 Ind. 243, 73 N. E. 906, it was said:

"Whether it proceeds from design of crafty speculators in oil-and-gas leases to enshroud their contracts with doubtful, ambiguous, inconsistent and absurd provisions, as a means of promoting their interests, or whether it comes from a custom in the rural districts of employing unskilled draftsmen, it is a notable fact that few subjects of contract contribute to the courts an equal proportion of written agreements for interpretation. The fact is so patent that courts generally, in gas-and-oil states, have come to place such contracts in a class of their own, and to look critically into such instruments for the real intention of the parties, because it so frequently happens that they cannot, on account of incongruous provisions, be enforced according to the strict letter of the contract." (Page 248.)

There is a special jurisprudence of the subject, one distinguishing feature of which is that language of doubtful import will be construed more favorably to the lessor, or at least that courts will incline away from a construction that would compel him, on condition of receiving some small periodical payment, to remain inactive while his oil is drained away through wells sunk on neighboring lands. (*Bettman v. Harness,* 42 W. Va. 433, 26 S. E. 271, 36 L. R. A. 566.) Another similar tendency is, where it is practicable, to avoid an interpretation that would make against the development of the resources of the property involved. (*Oil Co. v. Gas Co.,* 51 W. Va. 583, 42 S. E. 655, 59 L. R. A. 566.)

In the present case the third paragraph quoted from the lease was manifestly framed for the protection of the lessors in the respects suggested. In a general way it defines the degree of diligence with which the

work of development must be prosecuted when once begun. It is true that until a well is actually completed the quarterly payment must continue, but this is an inadequate substitute for any right they may have to insist that exploration shall be pressed with vigor after it has progressed so far as the drilling of a well. If the construction contended for by the defendant is correct it had the right, if by drilling a well it discovered that oil in paying quantities underlay the land, deliberately to refuse to complete it, and by the payment of ten dollars a quarter prevent all further operation on that tract, while the supply of oil was tapped through wells outside its boundaries. Indeed there was some evidence from which it was possible to draw an inference that this very situation was presented. To avoid allowing opportunity for such an unconscionable advantage it is only necessary to give force to the very words of the contract. They provide this: That when a well has been drilled—that is, when enough boring has been done to show the presence of oil—the lessee has but three courses open: (1) To complete it and see that it produces revenue; or (2) so to prosecute operations that six months shall not elapse without some drilling being done; or (3) to surrender all claims under the lease and suffer the lessors to resume the absolute control of their property. There is nothing harsh about this construction, and we think the trial court was justified in adopting it and in rendering judgment against the defendant accordingly.

But it is urged that although this interpretation might be permissible upon the face of the lease the plaintiffs cannot invoke it, because by accepting the ten dollars paid October 1, 1902, they admitted that the hole bored in the preceding July was not a well, since the quarterly payment was to cease whenever a well was completed. This argument ignores the distinction between completing a well and drilling a well. These phrases cannot be said, as a matter of law, to

mean the same thing. There was evidence in this case from which it might be found that a well was drilled but not completed, if these words are to be given their ordinary meaning, and there is nothing in the contract itself or in the undisputed facts that requires any unusual significance to be attached to them.

The judgment is affirmed.