No. 43,302

TOM C. CAIN and IVY CAIN, *Appellants,* v. GROSSHANS & PETERSEN, INC., a Corporation, *Appellee.*

(389 P. 2d 839)

Opinion filed March 7, 1964.

*Paul M. Buchanan,* of Wichita, argued the cause, and *Lawrence Weigand, Lawrence E. Curfman, Byron Brainerd, Charles W. Harris, Orval J. Kaufman, J. Ruse McCarthy, Donald A. Bell, J. L. Weigand,* and *Spencer L. Depew,* all of Wichita, were with him on the briefs for the appellants.

*Lelyn J. Braun,* of Wichita, argued the cause, and *Theodore H. Hill* and *Mearle D. Mason,* both of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Robb, J.: This is an appeal by plaintiffs from the judgment and orders of the trial court overruling plaintiffs' motions for new trial and for judgment notwithstanding the findings or for their enlargement, and from all other orders of the court.

While the action was based on a certain writing, to be discussed later, for clarity we shall state briefly the salient facts.

The defendant corporation is a contractor for highway work and submitted bids for road construction at the intersection of interstate highway 235 with U. S. highway 54 in Sedgwick county. Sometime in 1959, while defendant was working on the segment of the construction south of U. S. highway 54, a conversation had taken place between plaintiff, Tom C. Cain, and representatives of defendant with regard to the purchase from plaintiffs of dirt, sand, and earth, commonly called "borrow", to be used in the construction of the highway. At the first conversation both Mr. Petersen, president of the corporation, and Mr. Reicke, its superintendent, were present. It is admitted Mr. Reicke, as superintendent, had full power to select, purchase, and otherwise obtain borrow for the corporation's road-building projects. The work on the segment north of U. S. highway 54 had not yet been let for bids. It is undisputed that conversations had taken place between Reicke and plaintiffs in regard to the purchase of approximately sixteen acres of plaintiffs' land and in anticipation thereof, plaintiffs had ob-

tained from the Metropolitan Area Planning Commission and the Board of County Commissioners of Sedgwick county the required permit to use such land as a borrow pit.

In one of the conversations when Mr. Petersen was present, he and Mr. Reicke told Mr. Cain to have his attorneys make up a contract covering the sale of the land, which was done. The pertinent portions thereof are:

First, the date and description of the parties to the contract were set out including reference to the plaintiffs as the sellers and to the corporation as the buyer. That a payment of $500 provided for therein was subject to the payment of further sums whereby the sellers agreed to sell, and the buyer agreed to buy, the described land to be used as a borrow pit by the buyer for use on interstate highway 235. The date of the contract letting was to be on Friday, February 5, 1960, and was to cover an area south and north of U. S. highway 54 where it intersected interstate highway 235. Reference was made to the permit approved by the planning commission on July 2, 1959, and by the county commissioners on July 8, 1959. The buyer agreed to indemnify the sellers for any damages resulting by reason of any breach of the conditions and terms of the contract. If the buyer was not the successful bidder the contract would be null and void, or the buyer would have a thirty day option to assign the contract to the successful bidder, and receive payment therefor from such assignee in which event the contract would remain in full force. If the defendant was the successful bidder and was awarded the contract, it was to pay plaintiffs $2,000 per acre. Upon the contract becoming effective by the defendant being the successful bidder or by reason of the above assignment, payment would be made forty-five days from the time the work was begun. The intention of the parties was that the contract was a firm agreement for the selling and purchase of the land if the buyer's bid was accepted but if not, the contract would give the buyer an option for thirty days to provide for the above assignment. The $500 was paid to the sellers in consideration for and execution of the contract and would not be refunded and was not to be considered in the determination of final amount to be paid.

On February 5, 1960, the date the bids on the construction project were submitted, plaintiffs delivered their contract for borrow to defendant. The contract was never returned to plaintiffs but later in the day, Mr. Reicke delivered defendant's check for $500 to plaintiffs at their home.

Defendant was the successful bidder. The above-mentioned contract was delivered to defendant's attorney on February 8, 1960, some changes were made and the contract embodying those changes was returned to Mr. Petersen between February 16 and February 29, 1960. On February 16, 1960, the attorney was notified of the acceptance of defendant's bid which was within ten days rather than the usual twelve days' notice of acceptance.

Defendant entered into the construction of the project, which was in due time completed, but none of the materials from the borrow pit on plaintiffs' land was ever used. The evidence is uncontradicted that at the time of the letting of the construction contract, the contract between plaintiffs and defendant was the only borrow of which defendant was definitely assured. It is recognized that definite assurance of borrow is always an important part of the bid on such road construction projects. The record shows the borrow that was actually used in the construction was merely prospective at the time the bid was let. Upon defendant's breach of the terms of their contract, plaintiffs commenced this action.

At the beginning of the trial a jury was waived and the cause submitted to the court. The following colloquy took place between defense counsel and the court:

"MR. HILL: Your Honor, on behalf of the defendant in this matter, comes now the defendant and moves the Court orally to make findings of fact and conclusions of law.

"THE COURT: They will be made at the conclusion of the evidence.

"MR. HILL: At the conclusion of the evidence?

"THE COURT: So if you have any suggested findings, have them prepared and ready at the conclusion of the evidence.

"MR. HILL: Thank you."

When all the testimony was completed, however, the trial court immediately announced it was ready to rule. Plaintiffs' counsel asked if the court cared to hear argument and the court stated "No." It then made this final statement:

"The Court finds that there was never any meeting of the minds between the plaintiffs and defendant herein with reference to the contract to purchase the land owned by the plaintiffs; therefore, the Court will render judgment for the defendant for costs."

The formal journal entry of judgment referred to the defense counsel's request for and the granting of his motion for findings of fact and conclusions of law with the addition that any suggested

findings and conclusions were to be submitted to the court at the conclusion of the evidence. Later it was stated that no suggested findings of fact or conclusions of law having been submitted to the court for consideration, the cause was submitted and the court found there had never been any meeting of the minds of the parties with reference to the contract, and entered judgment in favor of defendant for costs. Whereupon plaintiffs filed their timely notice of appeal to this court assigning seven grounds of error committed by the trial court, but No. 6 will determine this appeal. It reads:

"The Court erred in finding that there was never any meeting of minds between the plaintiffs and the defendant herein with reference to the Contract to purchase the land owned by the plaintiffs."

In addition to the undisputed facts already stated, defendant's testimony showed that not only was it necessary to have as firm a price as possible on borrow but also that other factors such as the distance the borrow had to be transported became an important and integral part of the bid. Defendant's evidence further showed that considering the cost of transportation, the borrow actually used in the construction was cheaper than that of plaintiffs although theirs was the only borrow assured defendant at the time the construction contract was let.

In a preliminary way we may ask the question whether, in view of this record, the trial court made the findings or conclusions of fact separately from the conclusions of law required by G. S. 1949, 60-2921 as it had been requested to do at the outset of the trial. The authorities are replete under the statute (G. S. 1949, 60-3317) that failure to make such findings or conclusions of fact separately from the conclusions of law is not sufficient for a reversal unless the substantial rights of the party complaining are affected thereby. In support of its argument that the trial court made a finding of fact as well as a conclusion of law on all issues, defendant cites *Dryden v. Rogers,* 181 Kan. 154, 157, 309 P. 2d 409, and *In re Estate of Julian,* 184 Kan. 94, 334 P. 2d 432, where the rule was stated thus:

"A general finding made by a trial court determines every controverted fact in support of which evidence was introduced, and a general finding raises a presumption that the trial court found all facts necessary to sustain and support the judgment." (Syl. ¶ 1.)

However, if certain evidence is uncontradicted and undisputed the trial court cannot ignore such uncontradicted evidence. The writing here involved is before this court for examination the same

as it was before the trial court and we are of the opinion no ambiguity is revealed therein. This uncontradicted evidence makes clear that the intent of the parties was that plaintiffs were to furnish defendant with borrow, thus enabling it to have the required assurance of borrow in submitting its bid, and a definite description of the borrow, its location, and the price to be paid therefor were all set out. Plaintiffs proceeded to act in accordance with this intention and delivered the writing to defendant at the time defendant was required to have assurance of borrow. Defendant urged throughout the trial and also urges on appeal that this writing was solely an option contract. We cannot agree although the second part of the writing was stated to be an option and had the elements of an option in that if the defendant did not succeed in obtaining the construction contract, it would have thirty days in which to assign the contract for borrow to the successful bidder.

Defendant further urges that since the writing was not signed by defendant, it was void under the statute of frauds (G. S. 1949, 33-106) because of the impossibility of performance within one year. We do not consider the statute of frauds to be available to defendant under the circumstances. See *Somerset Acres v. Daniels,* 191 Kan. 583, 585, 383 P. 2d 952. The undisputed facts are that plaintiffs delivered the requested writing to Reicke, who then took it to the defendant's office. Later that day he went to plaintiffs' residence without the writing, but with the $500 check which he gave to plaintiffs, and told them that the writing was "All right." Thus the final elements of acceptance and consideration fell into place. As we stated in *Palmer v. The Land & Power Co.,* 180 Kan. 492, 306 P. 2d 152, we are not violating our well-known rule that we will not weigh evidence when a cause is here on appeal. We are merely following our equally well-recognized rule that ". . . when all the undisputed evidence is to a certain effect, then the question is one of law and not of fact." (pp. 499, 500.)

The result of the foreging is that we are compelled to hold the trial court erred in its conclusion there was no meeting of the minds in the writing under consideration. The judgment must be reversed and the case remanded for new trial on the question of the amount of damages only. It is so ordered.

JACKSON and FONTRON, JJ., not participating.