No. 44,387

Tom C. Cain and Ivy Cain, *Appellants* and *Cross-Appellees*, v. Grosshans & Petersen, Inc., a Corporation, *Appellee* and *Cross-Appellant*.

(413 P. 2d 98)

Opinion filed April 9, 1966.

*Paul M. Buchanan,* of Wichita, argued the cause, and *Lawrence Weigand, Lawrence E. Curfman, Byron Brainerd, Charles W. Harris, Orval J. Kaufman; J. Ruse McCarthy, Donald A. Bell, J. L. Weigand, Jr., Spencer L. Depew* and *Charles R. Moberly,* all of Wichita, were with him on the brief for the appellants and cross-appellees.

*Emmet A. Blaes,* of Wichita, argued the cause, and *Roetzel Jochems, Robert G. Braden, J. Francis Hesse, James W. Sargent, Stanley E. Wisdom, Cecil E. Merkel, Harry L. Hobson, Bruce W. Zuercher, L. D. Klenda, Charles M. Cline, Richard A. Loyd, Stephen M. Blaes* and *Jack S. Ramirez,* all of Wichita, were with him on the brief for the appellee and cross-appellant.

The opinion of the court was delivered by

Fontron, J.: This is an action to recover damages for breach of contract. The plaintiffs have appealed from a summary judgment entered in their favor for $34,060.00, and the defendant has filed

a cross-appeal. For the sake of clarity, we shall refer to the parties as plaintiffs, on the one hand, and defendant on the other.

While the questions presented both on appeal and cross-appeal pertain to the subject of damages, a brief history of the case, which is here for the second time, is essential to an understanding of the issues. The plaintiffs are the owners of a tract of land in Sedgwick County, Kansas, containing 17.03 acres, while the defendant is a highway construction firm which, in the early part of 1960, was in the process of bidding on certain highway improvements to Interstate Highway No. 235.

A few days before the highway contract was to be let, these parties entered into a contract in which the defendant agreed to buy from the plaintiffs, in the event it was awarded the contract, all the dirt, sand and earth materials on plaintiffs' tract of land at a price of $2,000.00 per acre. The contract set out that it was made "for the purpose of providing a Borrow Pit for the Buyer for use on Interstate Highway No. 235," and it contained an agreement by the defendant to comply with the terms and conditions of a conditional use permit approved by the Metropolitan Area Planning Commission and the Board of County Commissioners of Sedgwick County.

The defendant's bid was accepted by the State Highway Commission and it was awarded the highway contract. Subsequently, the defendant denied having made any contract with the plaintiffs and accordingly it took no dirt, sand or other earth materials whatever from the plaintiffs' tract. This lawsuit followed. It was first tried in 1962, at which time the defendant was awarded judgment by the trial court. An appeal from that judgment was perfected by the plaintiffs and is reported as *Cain v. Grosshans & Petersen, Inc.,* 192 Kan. 474, 389 P. 2d 839. On the appeal, this court held that the evidence established a contract between the parties, and remanded the case for trial on the amount of damages only.

After the case was remanded, the plaintiffs filed an amended petition in which the following damages were asked: (1) The contract price of the dirt and (2) the reasonable cost of completing the contract, or in the alternative, the increased value which would have accrued to plaintiffs' land had defendant completed the contract. An amended answer was thereafter filed wherein the defendant alleged, in mitigation of damages, that it was at all times ready, willing and able to buy some dirt, sand and earth materials

from plaintiffs' tract to the extent that it was economically feasible to use the same but that the plaintiffs refused to sell any such materials unless the defendant agreed to take all the materials from the entire tract; and that had plaintiffs permitted the defendant to take what it offered to buy, the defendant would have bought approximately 14 acres of the tract and would have paid approximately $28,000.00, thus mitigating plaintiffs' damages to that extent. The answer concluded by tendering into court the sum of $6,040.00.

With the pleadings in this shape, a pre-trial conference was held in which the parties jointly moved the court to determine issues of law in advance of trial and to determine the measure of damages to be applied. Pursuant thereto, the trial court ruled that the sole measure of plaintiffs' damages was the contract price of the dirt, and that the defendant's allegations in mitigation of damages constituted no defense to plaintiff's right to recover the contract price in full. The court further found there were no other issues of law or fact for trial and entered judgment for plaintiffs in the amount of $34,060.00.

Neither adversary was pleased with the judgment and both sides have appealed. The following points are relied on by plaintiffs: 1. The trial court improperly ordered a jury trial after it had once been waived. In view of the decision we hereafter reach, this point is moot and need not be considered further. 2. The trial court erred in refusing to hear evidence on the theory of damages based on the cost of completing the work that the defendant was bound to do under the contract. 3. In the alternative to point 2, the court erred in refusing to hear evidence on the difference in value of the property if defendant had performed its agreement.

The sole point raised by the defendant on its cross-appeal is that the court erred in refusing to hear evidence on the issue of mitigation of damages as it was alleged in the answer.

We shall first pursue the plaintiffs' claims of error, which may be said to arise by virtue of their interpretation of the following provisions in the contract:

". . . this contract shall be subject to all the conditions and terms of a Conditional Use Permit bearing No. CU-17 approved by the Metropolitan Area Planning Commission and the Board of County Commissioners of Sedgwick County, Kansas, on July 2, 1959 and July 8, 1959, respectively, and the Buyer hereby agrees to comply with all of the terms and conditions of such Permit and to indemnify the Sellers for any damages that they might suffer from any breach of any of said conditions and terms."

The conditional use permit referred to, which had been issued to the plaintiffs, not to the defendant, provided that the earth be extracted to a minimum depth of five feet below the present water table; that a V-mesh fence be installed around the perimeter of the property; that no excavation be nearer than six feet to the property line; that the slope should not exceed three to one; that use of the borrow pit be limited to providing fill for Interstate 235 and limited in time to two years; and that no pumping be permitted which would lower the general water table.

Because the contract was made subject to the terms of the conditional use permit, the plaintiffs would have us construe it to be a construction contract. They refer to the contract by that name in their brief and assert that their damages should be measured by the rules which apply where construction contracts are broken.

We believe that the plaintiffs wholly misconceive the purpose and design of the contract, which need not be set out here in full. The agreement was well summarized in our former opinion, to which the interested reader may refer. As we view the agreement, it clearly is not a contract to construct a lake for the improvement of plaintiff's property. It is, instead, a contract of sale in which "the Sellers agree to sell and the Buyer agrees to buy all the dirt, sand and earth materials" located on plaintiffs' tract—all 17.03 acres of it. The contract, itself, spells out its purpose as being "made for the purpose of providing a Borrow Pit for use on Interstate Highway No. 235."

Throughout the contract, from start to finish, the plaintiffs are designated as "Sellers" and the defendant as "Buyer." Nowhere does the buyer agree to build a lake for plaintiffs. The defendant's agreement is to purchase dirt, sand and earth materials from the plaintiffs at an agreed price even though, in the removal of the soil, the defendant is to comply with certain conditions imposed by public authorities.

If there were any remaining doubt as to what the parties intended, it would be dispelled by the following language:

"It is the intention of the parties hereto that this contract shall be a firm agreement for the selling and purchase of the dirt, sand and earth materials on all of the described property if the said State Highway Contract is awarded to the Buyer. . . ."

There is no need for us to determine what the defendant's liability might have been for failing to comply with the terms contained in the conditional use permit, if dirt had been removed from the

plaintiffs' premises pursuant to the contract. As it turned out, the defendant removed no earth at all and denied any obligation on its part to purchase dirt. The extent of the defendant's liability under such conditions cannot be gauged by the rules applicable to construction contracts.

It is generally, if not universally, held that damages which can be recovered for breach of contract are limited to those which may fairly be considered as arising in the usual course of things from the breach itself, or such as might reasonably be supposed to have been within the contemplation of both parties as the probable result of the breach. (22 Am. Jur. 2d, Damages, § 56, p. 86; *Cain Shoes, Inc. v. Gunn*, 194 Kan. 381, 383, 399 P. 2d 831.) In *Skinner v. Gibson*, 86 Kan. 431, 121 Pac. 513, this court held:

"It is a general rule that damages may be recovered when they arise naturally—that is, according to the usual course of things—from the breach of a contract, or are such as may reasonably be supposed to have been in the contemplation of the parties at the time they entered into it." (Syl. ¶ 1.)

Applying this well-established rule to the facts of the present case, we find no justification for charging the defendant with losses which the plaintiffs claimed to have suffered because they were not furnished with a fenced-in lake. We cannot reasonably assume that the defendant, at least, would have contemplated damage of that kind as naturally flowing from a breach of the contract.

We have not overlooked the several authorities cited by the plaintiffs, but consider them not in point. Many pertain directly to construction contracts. Others involve situations where dirt was taken from land and the premises were not left in the condition agreed upon. None of the cases are decisive of the question posed in this case. We believe that the plaintiffs' contentions on their appeal are without merit.

We next turn our attention to the defendant's cross-appeal. As previously indicated, the defendant maintains that the trial court erred when it held that facts plead in mitigation of damage failed to constitute a defense to the plaintiffs' claim for the full contract price. It will be recalled that defendant alleged an offer on its part to take only such dirt as it could economically use, but that plaintiffs refused unless the defendant agreed to take the full amount called for by the contract.

The defendant calls attention to the principle that where a party has been injured by a breach of contract he has a duty to minimize his loss to the extent reasonably possible under existing circum-

stances. We acknowledge this as the general rule in Kansas. Indeed, the principle has been reiterated on more than one occasion. (*Lawson v. Callaway,* 131 Kan. 789, 293 Pac. 503; *Lips v. Opp,* 150 Kan. 745, 96 P. 2d 865; *Swisher v. Beckett,* 172 Kan. 711, 242 P. 2d 831, and cases therein cited.)

In urging the application of this principle to the facts of the present case, the defendant further maintains that the duty of minimizing damages extends to the point where an injured party is required to deal with a breaching party and where, as here, a contract for the sale of materials having no ready market has been broken, the party who has been offended is obliged to deal with the repudiator in an effort to avoid or lessen his damage.

We are not prepared to say that an injured party may never be obligated to minimize his loss by entertaining a subsequent and less favorable offer from the breaching party, although the majority rule in this country appears to be that an innocent party is not required to execute a less advantageous contract with one who has already welshed on his agreement. (*Hirsch v. Georgia Iron & Coal Co.,* 169 Fed. 578; *Duncan v. Wohl, South & Co.,* 201 App. Div. 737, 195 N. Y. S. 381; *Krebs Hop Co. v. Livesley,* 59 Ore. 574, 114 Pac. 944, 118 Pac. 165; *Minn. Threshing Machine Co. v. M'Donald,* 10 N. D. 408, 87 N. W. 993, 998; *Ten Broeck Tyre Co. v. Rubber Trading Co.,* 186 Ky. 526, 217 S. W. 345; *Billetter v. Posell,* 94 C. A. 2d 858, 211 P. 2d 621. See also Corbin on Contracts, Damages, § 1043, p. 272.)

Under circumstances which prevailed in this case, we are of the opinion that plaintiffs were not bound to accept a less favorable offer from the defendant than that which led to the executed contract. Not only did the defendant refuse to accept the plaintiffs' dirt according to contract, but it took the position there was no contract at all. The defendant persisted in this stance up to the time of filing its amended answer on February 3, 1965, some five years after the contract was negotiated. This posture is conclusively shown by the first answer filed, wherein the defendant denied "that they [it] ever entered into any type of a contract, either oral or written, with the plaintiffs, or either of them."

The records of this court in *Cain v. Grosshans & Petersen, Inc.,* supra, reflect that throughout the first trial the defendant relied on its contention that no contract of sale was ever consummated. On the first appeal, as the opinion shows, the defendant maintained that the document on which the plaintiffs based their

action was, at best, no more than an option contract and even so, was void under the statute of frauds.

In view of the intransigent position assumed by the defendant, it would be a harsh rule which would require the plaintiffs to accede to new and less favorable terms which the defendant might deign to offer. An innocent party would be placed in an intolerable position were he compelled to mitigate his damages under a contract, whose existence the defaulting party flatly denied.

Not only would a guiltless party thus be placed in an anomalous position, but he would be faced with risk, as well. We believe that acceptance of a new and different proposal from a defaulting party who insists that no prior agreement was ever made might arguably subject the acceptor to the danger of having waived his contractual rights. It would be unjust to expose an innocent party to such hazard.

The reasoning in *International Contracting Co. v. Lamont*, 155 U. S. 303, 39 L. Ed. 160, 15 S. Ct. 97, is persuasive. In that case, suit was brought to compel the government to execute a contract pursuant to its acceptance of the plaintiff's bid. In the meantime, however, the government had called for new bids on the same work and plaintiff had submitted a new and lower bid which was accepted and resulted in a contract under which plaintiff had performed the work. In denying relief, the United States Supreme Court said:

". . . He [plaintiff] entered of his own accord into the second contract and has acted under it and has taken advantages which resulted from his action under it, having received the compensation which was to be paid under its terms. Having done all this, he is estopped from denying the validity of the contract. *Oregonian Railway v. Oregon Railway*, 10 Sawyer 464. Nor does the fact that in making his second contract, the relator protested that he had rights under the first better his position. If he had such rights and desired to maintain them, he should have abstained from putting himself in a position where he voluntarily took advantage of the second opportunity to secure the work. A party cannot avoid the legal consequences of his acts by protesting at the time he does them that he does not intend to subject himself to such consequences. . . ." (pp. 309, 310.)

The principle is illustrated in *Krebs Hop Co. v. Livesley*, supra, where Syllabus 6 reads:

"A purchaser of hops repudiated his contract, but at the same time offered to buy from the seller, at a price slightly in advance of the market price, the amount of hops he had contracted for. *Held*, that the refusal of the seller to accept the purchaser's second offer for the hops could not deprive him of the right to recover the difference between the contract and the market price

of the hops at the time and place of delivery; for the acceptance of that offer would have imperiled his rights under the first contract, on the theory that the second contract supplanted it."

The defendant calls attention to *Holly v. City of Neodesha*, 88 Kan. 102, 127 Pac. 616, and *Lumber Co. v. Sutton*, 46 Kan. 192, 26 Pac. 444, to support its argument that no waiver would have resulted from plaintiffs' acceptance of the subsequent offer. We believe neither case can be said to sustain the defendant's position.

The Holly case involved a dispute over the price of water furnished Mr. Holly by the city. In holding that Holly was not entitled to damages to crops occurring when the city shut off his water, but that he should have paid the higher price demanded by the city and then have sued for the different in the rates under dispute, this court said:

"The power of the city to withhold the water placed the parties on unequal terms, and the law would have regarded as involuntary any payment made to secure a restoration of service. . . ." (p. 112.) (Emphasis supplied.)

The rationale of the rule so announced by the court is found in the disparity between the two parties, a basic inequality which does not inhere in the relationship existing between the parties to this action.

The question presented in Sutton was whether the vendee of certain lumber had waived his right to recover damages occasioned by the vendor's failure to deliver the lumber at the time specified by contract, where the vendee had accepted delivery at a later date. The court held that the subsequent acceptance of the lumber did not constitute a waiver. The case is distinguishable from the one at bar, for the contract itself was undisputed. Neither party denied its existence or denied it was binding.

The defendant cites other cases involving waiver. However, they pertain to contracts whose existence was admitted, not denied. We believe this distinction has significance when it comes to resolving what, if any, duty rests upon an injured party to accept a new and less favorable offer from one who has defaulted on his contract.

Both parties refer to *In re Estate of Stannard*, 179 Kan. 394, 295 P. 2d 610, although we are hard pressed to understand how it can comfort the defendant's cause. There, the claimant sought damages for breach of a contract, which was undenied, to drill an oil well. One defense raised was that after expiration of the lease under which the decedent had agreed to drill the well, another offer was made to drill the well under a new lease containing identical terms

except as to the time of drilling. This court held that because the later offer contained new conditions, the plaintiff was not obliged to accept it, although had the offer been unqualified, a situation might have arisen where claimant could not have arbitrarily refused.

In the present case, the offer, if one was made, presented new conditions; it was not an unqualified proffer to perform existing contractual obligations. We conclude that, under the circumstances shown here, the trial court did not err in refusing to hear evidence to support the defendant's allegations of mitigation of damages.

No error appearing, the judgment of the court below is affirmed.