No. 44,663

Paul Gibbs, Thomas P. Beggs, Marie Gibbs, Myra H. Beggs, Lawrence C. Donelson, Florence Donelson, Mabel S. Beggs, R. C. Roberts and Louise J. Roberts, *Appellees,* v. Harold Erbert, *Appellant.*

(424 P. 2d 276)

Opinion filed March 4, 1967.

*Mitchell H. Bushey,* of Iola, argued the cause and was on the briefs for the appellant.

*Frederick G. Apt, Jr.,* of Iola, argued the cause, and *Charles H. Apt,* of Iola, and *Gilbert H. Clevidence,* of Kansas City, Missouri, were with him on the briefs for the appellees.

The opinion of the court was delivered by

Kaul, J.: This is an action for the partition of an oil and gas lease and for an accounting between the owners of the lease. The ownership is not in dispute. A receiver was appointed and partition was had without objection. Two of the parties filed elections

to take in opposition, the lease was sold and the receipts thereof in the amount of $7,700 are now held by the clerk of the district court.

This appeal was perfected by Harold Erbert, defendant below, from the judgment of the trial court in the accounting action. A procedural point was raised by plaintiffs (appellees) but not urged on oral argument. Therefore we shall proceed to the merits of the appeal.

The questions involve the construction of agreements for the sale of interests in and for the operation of the working interest in the lease.

On June 18, 1957, plaintiffs R. C. Roberts and Louise J. Roberts, husband and wife, being the owners in fee of the 160 acres of land leased, executed and delivered to defendant Robert A. Gordon an oil and gas lease for the primary term of five years, and for so long thereafter as either oil or gas was produced from the land by the lessee, his heirs or assigns. The lease is known to the plaintiffs and defendants, as well as to the public, as the "Roberts B. Lease."

Defendant Erbert acquired the lease subject to a $\frac{1}{32}$nd overriding royalty interest in Robert A. Gordon at a time, and in a manner undisclosed in the record.

On September 29, 1964, the trial court entered judgment in partition finding the ownership of interests in the lease to be as follows: Paul Gibbs $\frac{1}{8}$th; Marie Gibbs $\frac{1}{8}$th; Thomas B. Beggs $\frac{1}{8}$th; Myra H. Beggs and Thomas P. Beggs, husband and wife, $\frac{1}{8}$th; Lawrence Donelson and Florence Donelson, husband and wife, $\frac{1}{8}$th; Mabel S. Beggs $\frac{1}{8}$th (all plaintiffs below); and defendant Harold Erbert $\frac{2}{8}$ths, all subject to a $\frac{1}{32}$nd overriding royalty interest owned by defendant Robert A. Gordon and a $\frac{1}{8}$th landowners' royalty interest owned by R. C. Roberts and Louise J. Roberts, husband and wife.

Early in the spring of 1962 there was one drilled well (hereinafter referred to as well No. 1) on the leasehold which was cased but not on pump. At this time the lease was owned entirely by Erbert, subject to the overriding interest of Gordon. Erbert's lease was subject to cancellation on June 18, 1962, unless a new well was drilled or unless oil was produced from well No. 1. Erbert and plaintiffs Paul Gibbs and Thomas Beggs negotiated an agreement for the sale of interests in the lease. It was agreed that Gibbs and Beggs were to each receive a $\frac{1}{8}$th interest if they helped Erbert sell interests in the lease. Gibbs and Beggs claimed

they were to sell four ⅛th interests for $1,680 each, and Erbert was to sell a ⅛th interest for the same amount and was to retain a ⅛th interest for himself. Erbert claimed he was to keep a ⅛th interest and Gibbs and Beggs were to sell five ⅛th interests.

Gibbs and Beggs proceeded to sell four ⅛th interests. One-eighth interests were sold to Marie Gibbs; Myra H. and Thomas P. Beggs, husband and wife; Lawrence and Florence Donelson, husband and wife; and Mabel S. Beggs (who will be referred to as purchasers hereafter). Defendant Erbert made assignments of a ⅛th working interest to each purchaser and received $1,680 from Marie Gibbs and $1,700 from each of the other three. Contracts were prepared by Erbert and submitted to the four purchasers.

The contracts, insofar as material for our consideration, were as follows:

"WHEREAS, the parties of the second part are desirous of purchasing a one-eighth (⅛) interest in said gas and oil lease.

"Now, THEREFORE, for and in consideration of the sum of One Thousand, Six Hundred Eighty Dollars ($1,680.00), cash in hand paid, the party of the first part does assign to the parties of the second part an undivided one-eighth (⅛) interest in said gas and oil lease and it is agreed that the gas and oil well now on said lease will be put on pump.

"IT IS FURTHER AGREED that the party of the first part will drill a second well on said gas and oil lease and upon completion of said second well, the parties of the second part will pay an additional sum of Eight Hundred Forty Dollars ($840.00) to the party of the first part.

"IT IS FURTHER AGREED that the party of the first part will furnish all necessary equipment to market any oil which may be produced from said lease."

The four purchasers and plaintiffs Thomas Beggs and Paul Gibbs each paid Erbert $840, or a total of $5,040, in addition to the $1,700 paid by three of the purchasers and $1,680 by the fourth, or a grand total of $11,820.00.

Erbert testified that after the assignments were made he, Tom (Beggs) and Paul (Gibbs) got together and decided to drill well No. 2 before putting No. 1 on pump.

The No. 2 well was drilled first to the "squirrel sand" and some showing of oil was found. Erbert testified it was not as good as wells on an adjoining lease and after discussing the situation with Paul (Gibbs) it was decided to drill on to the Mississippi Lime Formation. His testimony on this point is disputed by plaintiffs. Some oil was found in the lime, but it went to water. Erbert tried to complete the lime formation by perforating and acidizing.

About 1400 feet of 4½ inch casing was set, and the well was cemented. Thereafter the No. 3 well was drilled and put on pump. Erbert testified that he requested plaintiffs Paul Gibbs and Thomas Beggs to obtain contributions for the completion costs on No. 2 well and for the drilling and equipment costs on the No. 3 well.

At this juncture irreconcilable differences between the parties arose and this action was filed in the early summer of 1964 (the exact date is not shown in the record).

As we have indicated the cause of action for partition was not contested. The issues in the accounting action were framed by plaintiffs' petition, defendant's answer and counterclaim and plaintiffs' reply thereto.

1. Plaintiffs contended that defendant agreed to fully equip and drill well No. 2, defendant denied this contention and claimed that under the written contract he was obligated only for the drilling of well No. 2.

2. Plaintiffs contended that $840 paid by each of them to defendant should be accounted for by defendant who claimed the $840 items were part of the consideration provided for in the contract, that he had made substantial compliance and no accounting by him was necessary.

3. Plaintiffs contended defendant breached his contract in not putting No. 1 well on pump; defendant claimed that by agreement he had furnished comparable equipment on No. 3 well and denied any breach on his part.

4. Plaintiffs claimed damages for the faulty and negligent completion of No. 2 well, which was denied by defendant.

5. Plaintiffs claimed that defendant, as a part of the agreement for the sale of the lease, made an oral agreement to sell a one-eighth interest to another person for $1,680 and that out of all the receipts defendant was to get $4,100 for the sale of his interest in the lease and that any amount received in excess of this sum was to be held by him in trust for the purpose of developing and equipping additional wells on the lease. The defendant denied any such agreement and claimed that he was not obligated under the written contract.

6. The defendant claimed that he was entitled to contribution from the plaintiffs for expenditures made in the equipping of No. 2 well and for his expenses in drilling and equipping No. 3 well,

less the cost of the pump string which was furnished by defendant to compensate for his failure to put the No. 1 on pump. The defendant attached a statement of expenditures entitled Exhibit "A" to his counterclaim, such sums totaling, according to defendant, $7,635.42. In our examination of defendant's statement of expenditures we have discerned what appears to be an error in addition on the part of defendant. In attempting to allocate expenditures listed by defendant between the No. 2 and No. 3 wells, we found $2,401.89 allocated to equipping the No. 2 well and $3,506.78 allocated to drilling and equipping the No. 3 well, or a total of $5,908.67, rather than the total sum of $7,635.42, as shown on defendant's statement. Since no cross-appeal has been taken by plaintiffs and in view of the manner in which the issues were resolved by the trial court, and are now determined on appeal, the error is not material.

Plaintiffs prayed for a full and complete accounting by defendant while defendant asked for judgment on his counterclaim in the amount of $2,634.43 against plaintiffs Paul Gibbs and Thomas P. Beggs, each respectively, and for judgment in the amount of $954.43 against each of the other four purchasers of the assigned one-eighth interests.

The accounting action was tried in the lower court on September 28, 1965. Findings of the trial court filed on October 12, 1965, are summarized.

The trial court found that plaintiff Mabel Gibbs signed the contract and that plaintiffs Myra H. Beggs, Lawrence Donelson, Florence Donelson and Mabel S. Beggs are deemed to have signed the contract by reason of their pleadings and that there was no written contract between defendant and plaintiffs Paul Gibbs and Thomas Beggs. The evidence offered by plaintiffs does not operate to vary the terms of the written agreement but is admissible for the purpose of construing ambiguous language in the contract and also as proof of a supplemental agreement between the parties, not inconsistent with the written contract. Plaintiffs Paul Gibbs and Thomas Beggs are not obligated to pay defendant $1,680 each for the one-eighth interest assigned to each of them. The consideration for these assignments were services rendered by them in selling the four-eighths interest to other plaintiffs.

The trial court further found that in the light of all the evidence, including the amounts of money paid to defendant for drilling a

second well, the conversations between the parties, their exchange of correspondence and defendant's own analysis of costs, his contractual obligation was to drill and equip well No. 2, *i. e.*, "complete" and put it into production.

The trial court further found no obligation on the part of any plaintiff to pay the defendant for any part of the drilling or equipping costs on well No. 3, because plaintiffs have discharged their obligations in this regard from the considerations initially paid. While the expense incurred by Erbert in drilling and equipping the No. 2 well is less than the amount paid by the plaintiffs for that purpose, the difference is substantially offset by Erbert's drilling cost ($1,900) on No. 3 well which he was not obligated to drill.

The trial court found for defendant on other issues raised. It also found the evidence insufficient to support any claims for damages by plaintiffs for breach of contract by him for his failure to place No. 1 well "on pump," that defendant's equipping and placing well No. 3 in production was the substantial equivalent to putting well No. 1 "on pump," and that plaintiffs acquiesced in the drilling of well No. 3.

The court found that the drilling of well No. 2 into the limestone strata rather than stopping at the "squirrel sand" was acquiesced in by plaintiffs and found no evidence to support any claim of plaintiffs for special damages in connection with the drilling of No. 2 well. The court also found that plaintiffs failed to establish a relationship of joint enterprise and that the relationship under the agreements was that of plaintiff cotenants designating defendant cotenant as operator and developer on the terms agreed upon and consequently there is no accounting indicated as among partners.

In summary the trial court stated in Finding No. 12 as follows:

"Mr. Erbert is indebted to each of the three plaintiffs who paid him $1700.00 instead of $1680.00, in the sum of $20.00 as over-payment by each.

"The result of these findings is that after the attorneys fees and expenses are allowed from the money in the hands of the clerk from the sale of the property the balance will be distributed to the parties in proportion to their respective interests without diminution or addition, except for the $20.00 which Erbert is obliged to pay each of three plaintiffs in accordance with paragraph 12 above."

The defendant filed a motion to modify and set aside the findings adverse to him and moved for judgment in accordance with such modification. The motion was overruled and defendant perfected this appeal.

Appellant Erbert contends the trial court erred in holding the written contract to be ambiguous and in finding that the evidence introduced by appellees did not operate to vary the terms of the written contract. He further contends that other findings of the court were contrary to the evidence introduced.

The theory of appellant, as we have been able to discern from the rather confusing record, appears to be that even though appellees Gibbs and Beggs did not sign the written contract, nevertheless it fully stated the relationship between them and appellant and they should be bound by the terms thereof. The trial court found adversely to appellant on this point. In finding No. 2 the trial court announced that there was no written contract between appellant and appellees Gibbs and Beggs and that the relationship between them was established by oral agreement. We believe the trial court's finding in this regard was correct. The evidence clearly discloses that no written contracts were signed by appellees Gibbs and Beggs. Further, Erbert admitted that Gibbs and Beggs were to each get a ⅛th interest for their services in selling interests in the lease, the only dispute being as to whether they were to sell ⅘ths or ⅝ths. The testimony of both appellant and appellees was that it was orally agreed, shortly after the written assignments were made, not to put the No. 1 well on pump, as called for in the contract, but to proceed with the drilling of No. 2 well. We also note that much of the controversy between the parties stems from drilling and equipping the No. 3 well which was not mentioned or referred to in the written contract.

Since the evidence gleaned from the testimony of the appellees Gibbs and Beggs and also from the testimony of appellant supports the trial court's finding of an oral agreement between them and as to the terms thereof, such findings cannot be disturbed on appellate review. It has long been a firmly established rule of appellate practice in this jurisdiction that findings by the trier of facts, supported by competent evidence, will not be disturbed on appeal. Some of our more recent cases in which the rule was applied are *Callan v. Biermann,* 194 Kan. 219, 398 P. 2d 355; *Hendrixon v. Schemahorn,* 193 Kan. 640, 396 P. 2d 352; and *Cain v. Grosshans & Petersen, Inc.,* 192 Kan. 474, 389 P. 2d 839.

We shall next consider the written contracts which were found by the trial court to bind the four purchasers and the appellant. The trial court found some of the language used to be ambiguous

and received extrinsic evidence by way of parol testimony to clarify the ambiguity. The appellant claims such evidence operated to vary the terms of the written contract.

We are mindful of the well-established doctrine that to interpret a written contract, free from ambiguity, is a judicial function not requiring oral testimony. (*Simonich, Executrix v. Wilt,* 197 Kan. 417, 417 P. 2d 139; *Weiner v. Wilshire Oil Co.,* 192 Kan. 490, 389 P. 2d 803, and cases cited therein.) The scope of the application of the doctrine and the tests to be applied in determining whether ambiguity exists in a written contract are thoroughly considered and discussed in *Weiner v. Wilshire Oil Co.,* supra, and need not be repeated in detail.

In the instant case the pleadings and claims of the parties presented opposing views as to the meaning of the words "drilling" and "upon completion," as used in the contract. Appellant claims that his obligation as to the No. 2 well under the terms of the particular provision, now under consideration, was only to "drill" a well. On the other hand, the appellees claim that the addition of the words "upon completion" together with the wording of the last paragraph of the contract which provided that Erbert was to "furnish all necessary equipment to market any oil which may be produced from said lease," obligated him to drill the well, equip it and put it in production.

The trial court found, and we believe correctly so, that the uncertainty of the terms in the context used amounted to an ambiguity, subject to two possible interpretations. Extrinsic evidence then became proper as an aid in clarifying the intent and purpose of the uncertain language of the contract but not for the purpose of varying or nullifying its clear and positive provisions. (*Custom Built Homes Co. v. State Comm. of Rev. and Taxation,* 184 Kan. 31, 334 P. 2d 808, and *Weiner v. Wilshire Oil Co.,* supra.)

After hearing the evidence the trial court resolved the uncertainty by finding the contractual obligation of Erbert was to both drill and equip well No. 2. The trial court announced that it based such finding on all the evidence, including the amount of money paid to Erbert ($840) for each ⅛th interest, the conversations between the parties, their exchange of correspondence and Erbert's own analysis of costs. We find ample evidence in the record to support the trial court's finding in this regard. In *Weiner* we quoted with approval the rule as stated in *Skelly Oil Co. v.*

*Cities Service Oil Co.,* 160 Kan. 226, 160 P. 2d 246, in which a contract for the sale of an oil and gas royalty was under consideration:

". . . The general rule is that these instruments are to be interpreted from their 'four corners,' that is to say, that all the language used anywhere in the instrument should be taken into consideration and construed in harmony with other portions of the instrument. . . ." (p. 231.)

In our view, therefore, it was proper for the court, in attempting to interpret the obligation imposed by the use of the words "drilling" and "upon completion," to consider the language of the last paragraph which imposed upon Erbert the obligation to furnish all necessary equipment to market any oil which may be produced from said lease.

In the instant case it could be said that by considering the "four corners" of the instrument in question the obligation imposed upon the parties could have been determined without resort to extrinsic evidence and the same result obtained as was reached here by the court after considering parol testimony.

The meaning and effect of the words "drilling" and "completion," as used in an oil and gas lease, was considered and determined by this court in the case of *Betterment Co. v. Blaes,* 75 Kan. 69, 88 Pac. 555, where, in discussing the meaning of those terms, we said:

"This argument ignores the distinction between completing a well and drilling a well. These phrases cannot be said, as a matter of law, to mean the same thing. . . ." (pp. 75, 76.)

Applying this reasoning to the provision of the contract in the instant case we must find the obligation of appellant Erbert to have been twofold, *i. e.,* (1) to drill well No. 2 and (2) to complete it by equipping and putting it into production. While we believe the contract in the instant case could have been interpreted on its face and the same conclusion reached without resort to extrinsic evidence the issues raised by the accounting action here obviously required parol testimony to obtain a complete and equitable adjudication for the simple reason that much of the controversy here stemmed from admitted modifications of the contract and subsequent oral agreements between the parties both express and implied by acquiescence.

As has been stated, the drilling of No. 3 well was not mentioned or provided for in the written contract. The reasons for the drilling of the No. 3 well and the terms under which it was proceeded with are in dispute. It is admitted by appellees that no additional funds

were paid to Erbert for the drilling of No. 3 well. They claim that he, Erbert, was to equip, *i. e.,* put on pump, the No. 3 well in lieu of his failure to put the No. 1 well on pump and that he had sufficient funds on hand resulting from unexpended funds in connection with the No. 1 and No. 2 wells to more than offset the expense (about $1,900) of drilling the No. 3 well. Erbert, on the other hand, contended that he was only obligated to equip the No. 3 well in lieu of equipping No. 1 well and that he was to be reimbursed from appellees for the drilling expense.

In this connection the trial court found the expense incurred by Erbert in drilling and equipping the No. 2 well to be less than the amount paid by appellees for that purpose but that the difference was substantially offset by Erbert's drilling costs ($1,900) of well No. 3, which he was not obligated to drill but in the drilling of which the appellees acquiesced.

Since the No. 3 well was not mentioned in the contract, oral testimony was necessary and permissible in determining the rights and obligations of parties in connection therewith. Where a written contract is incomplete or silent in some essential point incident thereto, parol evidence is admissible to aid in its construction, (*Mayse v. Grieves,* 130 Kan. 96, 285 Pac. 630) or to show the complete agreement of the parties of which the writing is only a part. (*Ray v. Allen,* 159 Kan. 167, 152 P. 2d 851.) See, also, *Stapleton v. Hartman,* 174 Kan. 468, 257 P. 2d 113.

It is also well settled that the terms of a written contract may be varied, modified, waived, annulled or wholly set aside by any subsequent executed contract whether such subsequent executed contract be in writing or parol. (*Bailey v. Norton,* 178 Kan. 104, 108, 283 P. 2d 400; *Hill v. Maxwell,* 71 Kan. 72, 79 Pac. 1088; and *Todd v. Allen,* 18 Kan. [2nd Ed.] 543, 545.)

We have carefully reviewed the evidence offered by both the appellees and appellant as to the amount paid in by appellees, compared to the expenditures of appellant plus his compensation for the assignment of six ⅛th interests. Under the obligations imposed on the parties by the oral and written contracts, as found and construed, we find no error in the trial court's findings in connection with the No. 3 well.

The trial court properly considered oral testimony and other extrinsic evidence in interpreting and completing the terms of the contract in this case and the findings are supported by the evidence.

The judgment is affirmed.